## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| ASSOCIATED CONSTRUCTION / AP CONSTRUCTION, LLC<br>        Plaintiff,<br><br>        v.<br><br>THE HANOVER INSURANCE COMPANY, ET. AL.<br>        Defendants. | No. 3:15-cv-1600 (MPS) |

### Ruling on Motions to Dismiss

### I.    Introduction

This lawsuit arises out of surety bonds issued for a construction project in Stamford, Connecticut.  Associated Construction / A.P. Construction, LLC ("Associated Construction"), a construction contractor, alleges that the issuer of the bonds, Hanover Insurance Company ("Hanover" or the "Surety"), and its alleged agents, Scott Adams, Avalon Risk, LLC ("Avalon"), and Lighthouse Management, LLC ("Lighthouse"), failed to perform under the bonds and other related contracts and made misrepresentations in connection with the project.  Associated Construction brings claims for (i) breach of contract (count one), (ii) violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a et seq. ("CUTPA") (count two), (iii) breach of the covenant of good faith and fair dealing (count three), and (iv) violation of the Connecticut Unfair Insurance Practices Act, Conn. Gen. Stat. § 38a-815 et seq. ("CUIPA") (count four).

Lighthouse has moved to dismiss Associated Construction's amended complaint under Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6), arguing that Associated Construction lacks standing and has failed to state a claim against Lighthouse.  Adams and Avalon (the "Avalon Defendants") have moved to dismiss the amended complaint under Fed. R. Civ. P. 12(b)(6),

arguing it does not plead a cognizable claim against them.  For the reasons set forth below, both motions to dismiss are GRANTED IN PART AND DENIED IN PART.  All claims against Avalon are dismissed.  The breach of contract (count one), breach of the covenant of good faith and fair dealing (count three), and CUIPA (count four) claims against Lighthouse and Scott Adams are dismissed.  The CUTPA (count two) claims against Lighthouse and Adams survive, together with all of the claims against Hanover, which has not moved to dismiss.

## II.   The Amended Complaint

The following allegations are taken from the amended complaint and assumed to be true.

### A.  The Project

Associated Construction "was hired to construct a residential housing project in Stamford, Connecticut known as Park Square West Phase 2 (the 'Project')."  (ECF No. 43 at ¶ 8.)  Associated Construction sought to hire a subcontractor to "furnish, deliver and erect certain cold rolled structural framing, light gauge metal studs, sheetrock, taping and other related work" for the Project (the "Sheetrock Work").  (*Id*. at ¶ 9.)  The "Sheetrock Work was a critical trade for the Project."  (*Id*. at ¶ 11.)  "Any delay to the Sheetrock Work would translate into a day-for-day delay in the overall [p]roject [c]ompletion [d]ate."  (*Id*.)  Associated Construction received a bid for the Sheetrock Work from Intext.  (*Id*. at ¶ 10.)

### B.  The Performance Bonds and the Subcontracts

Before Associated Construction would accept Intext's bid, Associated Construction "required that Intext furnish a payment bond and performance bond."  (*Id*. at ¶ 12.) "[P]erformance bonds and payments bonds are undertakings by an insurance company based on written documents…which in effect guarantee the subcontractor will perform its work and make payment to all its subcontractors and suppliers who contracted directly with Intext to complete

the Sheetrock Work."  (*Id*.)  Associated Construction required Intext to furnish bonds in the amount of approximately $4,600,000.  (*Id*. at ¶ 16.)

Intext was referred to Mr. Adams, who was an "administrator of a program established by [Hanover] to serve higher risk clients."  (*Id*. at ¶¶ 13, 14.)  Mr. Adams proposed "that he, through his two companies [Avalon and Lighthouse] and through Hanover could provide payment and performance bonds and provide other ancillary professional project oversight, accounting and bookkeeping" to Intext "so that the Sheetrock Work would be performed according to" Associated Construction's schedule.  (*Id*. at ¶¶ 15, 17.)  Mr. Adams, "for the Adams Defendants"[1] and "as an agent of Hanover", pitched a specific proposal to Associated Construction "[a]t a meeting on October 9, 2013 in Stamford, Connecticut."  (*Id*. at ¶ 19.)  He represented to Associated Construction that Hanover "would provide three performance bonds which would perform as if a single performance bond had been issued for all the work."  (*Id*.) He proposed the issuance of three bonds because "he did not have the authority from [Hanover] to issue a single bond for the entire amount" sought by Associated Construction.  (*Id*.) Associated Construction "accepted Hanover's and the Adams Defendants' proposal."  (*Id*. at ¶ 18.)

Following the October 9 meeting, Hanover issued three performance bonds to Intext for the Sheetrock Work, which Mr. Adams delivered to Associated Construction.  (*Id*. at ¶¶ 20, 22.) Two of the bonds – bond number 1026020 and bond number 1026021 – named Hanover as the "Surety," Associated Construction as the "Owner" and "Obligee," and Intext as the "Principal."

---

[1] The amended complaint refers to Mr. Adams, Lighthouse, and Avalon as the "Adams Defendants."  (ECF No. 43 at ¶ 5.)  The motions to dismiss, however, were filed by (i) Lighthouse, and (ii) Adams and Avalon, who refer to themselves collectively as the "Avalon Defendants."  In the discussion section, I will refer to Adams and Avalon as the "Avalon Defendants" and treat Lighthouse separately.

(*Id*. at ¶ 20.)  The final bond – bond number 1026022 – named Hanover as the "Surety,"

Associated Construction as the "Owner" and "Obligee," and IBS Contracting, LLC ("IBS") as

the "Principal."  (*Id*.)[2]  The bonds are attached to the amended complaint.  *See* Fed. R. Civ. P.

10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for

all purposes.")

Also after the October 9 meeting, "Intext and [Associated Construction] signed the

[s]ubcontracts" — one for each of the bonds.  (*Id*. at ¶ 24)[3]  Associated Construction signed the

subcontracts based "upon the representations made by Mr. Adams at the October [9], 2013

meeting."  (*Id*.)[4]

### C.  The Disbursement Control Agreements

In connection with issuing the bonds, Hanover "required Intext and [Associated

Construction] to use the services of Lighthouse as a 'Disbursement Agent.'"  (*Id*. at ¶ 26.)  As a

Disbursement Agent, Lighthouse would "account for and pay bills arising from the Project with

the money earned and paid as the Sheetrock Work progressed."  (*Id*. at ¶ 26.)  Three

disbursement control agreements (the "DCAs") were executed, one for each of the bonds issued,

and each is attached to the complaint.  (*Id*. at ¶¶ 26-27.)  Intext and Lighthouse entered into two

of the DCAs.  (ECF No. 43-2 at 63, ECF No. 43-4 at 3.)  IBS and Lighthouse entered into the

---

[2] The amended complaint alleges that "Intext is responsible for everything for which IBS
Contracting, LLC may be responsible."  (ECF No. 43 at ¶ 20.)
[3] The amended complaint refers to a single subcontract but attaches three subcontracts, one
corresponding to each of the three bonds.  (*Id*. at ¶ 12); *see also* (ECF No. 43-1 at 71); (ECF No.
43-3 at 11); (ECF No. 43-4 at 28.)
[4] This allegation refers to the meeting as taking place on October 8, 2013.  But, both earlier and
later, the amended complaint alleges that the meeting took place on October 9, 2013.  (*Id*. at ¶¶
19, 62(g), 86(i).)  Therefore, I construe the allegation to mean that the meeting took place on
October 9, 2013.

final DCA.  (ECF No. 43-4 at 52.) [5]  The purpose of the DCAs was "to assure the proper

handling of the funds for the benefit of [Intext, Associated Construction, and Hanover]…"  (ECF

No. 43-2 at 63, ECF No. 43-4 at 3, *id.* at 52.)

The recitals in the DCAs stated that "[a]s a condition to issuing the Bonds, the Surety

requires the Contractor [i.e., Intext] to execute an Agreement of Indemnity…"  (ECF No. 43-2 at

63, ECF No. 43-4 at 3, *id.* at 52.)  They also contained an acknowledgement from Intext that the

"issuance of the Bonds by the Surety and the provisions in the [DCAs] [are] to assure the proper

handling of the funds for the benefit of…[Associated Construction] and the Surety…"  (ECF No.

43-2 at 63, ECF No. 43-4 at 3, *id.* at 52.)  The DCAs required Intext to "assign to [Lighthouse]

the right to receive all monies payable by [Associated Construction]" under the subcontract.

(ECF No. 43-2 at 63, ECF No. 43-4 at 3, *id.* at 52.)  Further, under the DCAs, Intext agreed to

"direct [Associated Construction] to pay all" monies due to Intext from Associated Construction

into a disbursement account that would be controlled by Lighthouse.  (ECF No. 43-2 at 63, ECF

No. 43-4 at 3, ECF No. 43-4 at 52.)  The DCAs also designated Hanover as "the third-party

beneficiary under the agreement."  (ECF No. 43-2 at 72, ECF No. 43-4 at 12, *id.* at 61.)

Moreover, the DCAs provided that "if the amount of money held by Lighthouse was less than

necessary to complete the Project, considering the value of the balance of work and money to be

paid on account…Lighthouse could demand that Intext deposit sufficient funds with Lighthouse

to cover the anticipated expenses."  (ECF No. 43 at ¶ 33.)  The DCAs also contained an

---

[5] Other than the parties to the DCA, each DCA is identical.  (ECF No. 43-2 at 49-60, ECF No. 43-4 at 3-14, *id.* at 52-63.)

applicable law provision stating that "the laws of the State of New Jersey shall govern all aspects of the [DCA]." (ECF No. 43-2 at 73, ECF No. 43-4 at 13, *id.* at 62.)[6]

### D.   Intext's Default

Intext's "[w]ork began as expected, and [Associated Construction] made payments as required" under the subcontracts. (*Id.* at ¶ 25.) But "[d]uring the winter of 2013-2014, the Adams Defendants became aware that without additional management and financial support, Intext would not be able to complete the Sheetrock Work." (*Id.* at ¶ 29.) The Adams Defendants, however, "failed to…advise [Associated Construction]" of Intext's difficulties and "continued to request payments from [Associated Construction] on account for the Sheetrock Work." (*Id.* at ¶ 30.) Intext continued to "struggle[] with the Sheetrock Work." (*Id.* at ¶ 31.) On April 8, 2014, "Intext was formally notified in writing, in accordance with the [s]ubcontracts, that its progress and quality of work were unacceptable." (*Id.*).

Due to Intext's challenges with the Sheetrock Work, on May 8, 2014, "a meeting was held in Stamford, Connecticut between the Adams Defendants as representatives for the Surety and [Associated Construction]." (*Id.* at ¶ 32.) Associated Construction was represented by "Mr. Walsh, Mr. Orlando, Mr. Ashforth and Mr. Jankowski." (*Id.*) "Mr. Adams attended as a representative of the Surety." (*Id.*) The parties discussed the "importance of the Sheetrock

---

[6] The DCAs also contain a forum selection clause designating New Jersey as the forum to resolve "all disputes which arise under the [DCAs]." (ECF No. 43-2 at 73, ECF No. 43-4 at 13, *id.* at 62.) The Avalon Defendants invoke this provision in their brief, arguing that this Court is not the proper forum. But they fail to address why they, as non-parties to the DCAs, should be allowed to enforce their provisions. (ECF No. 50-1 at 7.) And Lighthouse, which is a party to the DCAs, has waived the forum selection clause by pursuing a substantive motion in this Court that does not raise the issue. *Diesel Props S.r.L. v. Greystone Bus. Credit II LLC*, No. 07 CIV. 9580 (HB), 2008 WL 4833001, at *15 (S.D.N.Y. Nov. 5, 2008)("Courts have found …waiver of venue where a party has…actively pursued substantive motions.").

Work."  (*Id*.)  At the meeting, Mr. Adams represented "that there were adequate funds to complete the project."  (*Id*. at ¶ 62(k).)

After the May 8, 2014 meeting, "Intext made promises to [Associated Construction] to increase its labor force."  (*Id*. at ¶ 34.)  But "Intext did not increase its labor force and fell further behind schedule by three more weeks."  (*Id*.)  Then, on "June 2, 2014, [Associated Construction] declared Intext in default of the [s]ubcontracts and so advised [Hanover] and the Adams Defendants."  (*Id*. at ¶ 35.)  Further, on "June 12, 2014, [Associated Construction] asserted claims against each and every [bond]."  (*Id*. at ¶ 36.)  "On June 18, 2014, [Associated Construction] advised the Adams Defendants, Intext and the Surety of further defaults in accordance with the [Bonds] and [s]ubcontracts."  (*Id*. at ¶ 37.)  "Intext, the Adams Defendants and the Surety, again, failed to cure the defaults."  (*Id*.)  Subsequently, "Intext fell further behind schedule[,] which forced [Associated Construction] to incur additional expenses as Intext's performance required [Associated Construction] to supplement Intext's labor and otherwise address Intext's defaults."  (*Id*. at ¶ 38.)  On July 15, 2014, Associated Construction terminated Intext. (*Id*. at ¶ 40.)

Associated Construction demanded that Hanover perform under the bonds.  (*Id*. at ¶ 41.)  Hanover refused.  (*Id*.)  Then, "in October 2014, [Hanover] made a payment of $2,356,733.27" for Associated Construction's claims. (*Id*. at ¶ 42.)  Associated Construction claims that it incurred "damages of $6,000,000 in excess of [Hanover's] partial payment" because "[Hanover], the Adams Defendants and Intext failed to perform under the [s]ubcontract[s] and [bonds]."  (*Id*. at ¶ 43.)

### III.    Legal Standards

#### A.  Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000).  In reviewing a motion to dismiss under Rule 12(b)(1), a court "must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Austl. Bank Ltd.,* 547 F.3d 167, 170 (2d Cir. 2008)(internal quotation marks and citation omitted).  Moreover, a court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue..." *J.S. ex rel. N.S. v. Attica Cent. Schs.,* 386 F.3d 107, 110 (2d Cir. 2004).  "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Tranp. Sys, Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).

#### B.  Rule 12(b)(6)

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences from those allegations in favor of the plaintiff.  *Miller Auto Corp. v. Jaguar Land Rover North America, L.L.C.*, 812 F. Supp.2d 133, 135 (D. Conn. 2011).  To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)(quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* (internal quotation marks and citations omitted).  The complaint must contain more

than "'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.*  "Threadbare recitals of

the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

"A complaint is deemed to include any written instrument attached to it as an exhibit, materials

incorporated in it by reference, and documents that, although not incorporated by reference, are

'integral' to the complaint." *Sira v. Morton,* 380 F.3d 57, 67 (2d Cir. 2004)(citations omitted).

"Additionally, if the allegations of a complaint are contradicted by documents made a part

thereof, the document controls and the court need not accept as true the allegations of the

complaint." *Sazerac Co. v. Falk*, 861 F. Supp. 253, 257 (S.D.N.Y. 1994).

**IV.    Discussion**

I analyze Lighthouse's and the Avalon Defendants' motions to dismiss in turn.

**A.  Lighthouse's Motion to Dismiss**

**1.  Associated Construction Has Standing**

Lighthouse argues Association Construction lacks standing.  For a plaintiff to have

standing under Article III's case-or-controversy requirement, the plaintiff must have suffered an

"injury in fact" that is "fairly traceable to the challenged action of the defendant" and "it must be

likely, as opposed to merely speculative, that the injury will be redressed by a favorable

decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)(citations, internal quotation

marks, and alterations omitted).  There is no question that Associated Construction has standing

because the amended complaint alleges an "injury in fact," i.e., the "loss of more than

$6,000,000" (ECF No. 43 at ¶ 66), and that injury is "fairly traceable to [the defendants' alleged

breach of contract and other wrongs]" and "will be redressed by a favorable decision," i.e., the

"award of damages."  (ECF No. 43 at 20.)  Thus Associated Construction has Article III

standing.[7]

      2.   Count One: Breach of Contract[8]

Associated Construction alleges a breach of contract on the grounds that "Lighthouse

continued to disburse funds after [Intext's] default" in violation of the DCAs.  (ECF No. 43 at ¶

54.)  But this claim fails because Associated Construction was neither a party nor a third-party

beneficiary under the DCAs.

Under New Jersey law, which is the law specified in each of the DCAs,[9] it is well

established that "one who is not a party to a contract may not sue to enforce it merely because he

or she happens to receive a benefit from it." *Tirgan v. Mega Life & Health Ins.*, 700 A.2d 1239,

1241 (N.J. Super. Ct. 1997).  Associated Construction is not a party to the DCAs.  The only

parties to the DCAs are Intext, Lighthouse, and IBS.  (ECF No. 43-2 at 63)("This Disbursement

Control Agreement ('Agreement') is…between Intext Building Systems, LLC ("Contractor")

and Lighthouse Management Services ("Disbursement Agent")); *see also* (ECF No. 43-4 at 3,

_____

[7] Lighthouse also makes arguments under the rubric of "state law standing," specifically, that Associated Construction was not a party to the DCAs.  These arguments will be considered as part of my analysis of the merits of the breach of contract and other claims below.  *See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 262 n. 8 (1977)("State law of standing…does not govern [jurisdictional] determinations in the federal courts."); *Cf. Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1388 n. 4 (2014)(calling the term "statutory standing" "misleading, since the absence of a valid…cause of action does not implicate subject matter jurisdiction, *i.e.*, the court's statutory or constitutional *power* to adjudicate the case.")(internal quotations marks omitted)(emphasis in original).
[8] Although the amended complaint states that the breach of contract count is "as to the Surety [i.e., Hanover]," Associated Construction's brief argues that it also asserts breach of contract claims against Lighthouse and the Avalon Defendants.  (ECF No. 56 at 7-12.)  Because paragraph 45 of the breach of contract count, when construed in favor of Associated Construction, alleges that Lighthouse and the Avalon Defendants also breached contractual obligations to Associated Construction, I construe this claim as targeting all of the defendants.
[9] (ECF No. 43-2 at 73)("[T]he laws of New Jersey shall govern all aspects of the [DCA]."); *see also* (ECF No. 43-4 at 13, *id*. at 62.)

52)  Nonetheless, Associated Construction might be entitled to sue if it was a third-party beneficiary under the DCAs.  *Air Master Sales Co. v. Northbridge Park Co-Op, Inc.*, 748 F. Supp. 1110, 1117 (D.N.J. 1990)("The essence of contract liability to a third party is that the contract be made for the benefit of said third party within the intent and contemplation of the contracting parties.  Unless such a conclusion can be derived from the contract or surrounding facts, a third party has no right of action under that contract despite the fact that he may derive an incidental benefit from its performance.").  To determine whether Associated Construction is a third-party beneficiary, I look to:

> the intention of the parties who actually made the contract.  They are the persons who agree upon the promises, the covenants, the guarantees; they are the persons who create the rights and obligations which flow from the contract.  Thus, the real test is whether the contracting parties intended that a third party should receive a benefit which might be enforced in the courts; and the fact that such a benefit exists, or that the third party is named, is merely evidence of this intention.

*Broadway Maint. Corp. v. Rutgers, State Univ.*, 90 N.J. 253, 259 (1982)(internal quotation marks, alterations, and citation omitted);  *Air Master Sales Co.*, 748 F. Supp. at 1117 ("New Jersey courts have been hesitant to imply a third party beneficiary obligation unless the parties explicitly indicate that (1) the claimant is an intended beneficiary of the proposed arrangement and (2) that the claimant will have a direct claim under the contract.").  To ascertain the contracting parties' intent, New Jersey courts examine whether the parties have expressly vested enforceable rights in a third party or, if the contract is silent, "the pertinent provisions in the agreement and the surrounding circumstances."  *Broadway Maint. Corp*, 90 N.J. at 260.

A review of the DCAs shows that the parties did not intend that Associated Construction "should receive a benefit which might be enforced in the courts."  *Id.*  Rather, the agreements provide that Hanover is the only intended third-party beneficiary.  The DCAs expressly state that "[Hanover] is a third-party beneficiary under the [DCA]," and include no similar language about

Associated Construction or any other person.  (ECF No. 43-2 at 72); *see also* (ECF No. 43-4 at 12, 61.)  Furthermore, the DCAs do not confer any economic benefits upon Associated Construction.  None of the DCAs' provisions direct payment to Associated Construction.  On the contrary, the DCAs provide for the handling of payments made *by* Associated Construction to Intext.  (ECF No. 43-2 at 63)("[Intext] hereby assigns to [Lighthouse] the right to receive all monies payable by [Associated Construction] under the Contract to [Intext].");  *see also* (ECF No. 43-4 at 3, 52.)  The agreements make clear that their purpose is to assure that monies paid to Intext by Associated Construction are properly used for the Project in order to reduce the risk Hanover might have to perform under the bonds.  (ECF No. 43-2 at 63)("As a condition to issuing the Bonds, [Hanover] requires [Intext]…to use the services of [Lighthouse] to monitor [Intext's] performance of the [subcontracts]); *see also* (ECF No. 43-4 at 3, 52.)

The commercial context confirms that the DCAs' benefits were intended for Hanover only.  "As a condition to issuing the Bonds [and executing the DCAs]," Hanover "require[d] [Intext] to execute an Agreement of Indemnity."  (ECF No. 43-2 at 63); *see also* (ECF No. 43-4 at 3, 52.)  Although that agreement is not attached to the amended complaint, it is referred to in the DCAs and presumably requires Intext to indemnify Hanover in the event Intext defaults under the subcontracts.  Thus, to protect itself against a default by Intext – a circumstance that would trigger its own obligations under the bonds – Hanover required Intext to enter into the DCAs with Lighthouse.  In other words, the purpose of the DCAs is to protect – and thus benefit – Hanover.

Associated Construction points to language in the DCAs stating "the proper handling of the funds" is "for the benefit of [Intext], [*Associated Construction*], and…[Hanover]…"  (ECF No. 43-2 at 63 (emphasis added)); *see also* (ECF No. 43-4 at 3, 52.)  That language, however,

cannot overcome the express designation of Hanover as the sole third-party beneficiary.  *See Broadway Maint. Corp.*, 90 N.J. at 260 ("The parties of course may expressly negate any legally enforceable right in a third party.  Likewise they may expressly provide for that right.").  Even if Associated Construction received some benefit from the DCA – and that is not apparent, in spite of the clause in the recital – that is not enough:  there must have been a "contractual intent to recognize a right to performance in [Associated Construction]."  *Id.* at 259.  As shown, the DCAs contain no evidence of such an intent.  Thus, I find that Associated Construction's breach of contract claim based on the DCAs fails.

      3.   Count Three: "Bad Faith" (Breach of Covenant of Good Faith and Fair Dealing)

      Associated Construction also sues Lighthouse for "bad faith," which I interpret as a claim for breach of the covenant of good faith and fair dealing.  *See* Conn. Civil Jury Instr. § 4.2-11, Implied Covenant of Good Faith and Fair Dealing ("Good faith is defined as the opposite of bad faith.")  Though the amended complaint does not contain any specific allegations as to Lighthouse in Count Three, it alleges elsewhere that Lighthouse continued to take "fees and other money" after it "became aware that Intext could not complete the Project without financial assistance from the Surety," (ECF No. 43 at ¶ 62(n)), and continued to "disburse[] funds from the control account when it knew or should have known there were not enough funds available" for Intext to "complete the Sheetrock Work."  (*Id.* at ¶ 62(l).)  Notwithstanding these allegations, Associated Construction's claim for breach of the covenant of good faith and fair dealing fails because Associated Construction has not alleged it was a party or a third-party beneficiary under the DCAs.  *See Ross v. Lowitz*, 120 A.3d 178, 180–81 (N.J. 2015)("Absent…evidence that [the parties] agreed to confer on plaintiffs the status of third-party beneficiaries to their….contract, plaintiffs have no direct claim…based on an alleged breach of the implied covenant of good faith

and fair dealing.);  *see also Saint Francis Hosp. & Med. Ctr. v. DeCaro*, No. CV950705814S, 1996 WL 737461, at *4 (Conn. Super. Ct. Dec. 9, 1996)("The law is clear that only contracting parties may enforce the implied covenant of good faith and fair dealing.  No Connecticut court has extended the implied covenant of fair dealing and good faith to parties who have not entered into a contractual relationship." (internal quotation marks and citation omitted)).

    4.   Count Two: CUTPA

Associated Construction also asserts a CUTPA claim against Lighthouse based on allegations that various acts by Lighthouse violated CUIPA.  (ECF No. 43 at ¶ 65.)  A plaintiff may state a CUTPA claim by alleging a defendant violated CUIPA.[10]  *Mead v. Burns*, 199 Conn. 651, 663 (1986)(holding "it is possible to state a cause of action under CUTPA for a violation of CUIPA").

The relevant CUIPA provision here is Conn Gen. Stat. § 38a-816(1)(a). [11]  In assessing a CUTPA claim asserting a violation of that provision, the Connecticut Supreme Court suggested that the plaintiff had to satisfy the four elements of a common law negligent misrepresentation claim: "(1) that the defendant made a misrepresentation of fact (2) that the defendant knew or

---

[10] Courts have held that surety contracts – like the bonds at issue here – fall within CUIPA's definition of "the business of insurance."  *Travelers Cas. v. F&F Mech. Contractors, Inc*., No. CV000444245S, 2001 WL 576662, at *3 (Conn. Super. Ct. May 8, 2001)(holding that the "'business of insurance'[ as defined in CUIPA] includes the making of surety contracts of the type involved in the present case."); *see also U.S. ex rel. Polied Envtl. Servs., Inc. v. Incor Grp., Inc.*, 238 F. Supp.2d 456, 463 (D. Conn. 2002)(noting that a surety may be sued under CUTPA for a CUIPA violation). In their briefs, both parties have apparently assumed that the activities by Lighthouse alleged in the amended complaint are sufficiently related to the bonds to subject those activities to CUIPA.

[11] The amended complaint does not identify the provision of CUIPA that Lighthouse allegedly violated, but "[n]o such explicit citation is necessary; the pleading must simply allege facts from which a violation can be found." *Belz v. Peerless Ins. Co.*, 46 F. Supp.3d 157, 165 n. 1 (D. Conn. 2014).  Furthermore, Associated Construction's memorandum in opposition identifies Conn Gen. Stat. § 38a-816(1)(a) in asserting that it has stated a CUIPA violation and, as discussed in the text, the facts alleged state a claim under that provision.  (ECF No. 56 at 13-16.)

should have known was false, and (3) that the plaintiff reasonably relied on the misrepresentation, and (4) suffered pecuniary harm as a result." *Nazami v. Patrons Mut. Ins. Co.,* 280 Conn. 619, 626 (2006).  I find that Associated Construction has plausibly stated a claim against Lighthouse satisfying those elements.  The amended complaint alleges a misrepresentation of fact:  Lighthouse, through its agent Adams, made "representations to [Associated Construction] on May 8, 2014 that there were adequate funds to complete the Project."  (ECF No. 43 at ¶ 62(k).)  It further alleges that Lighthouse knew or should have known there were insufficient funds for the Sheetrock Work because "Lighthouse failed to determine whether there were adequate funds in the funds control account" when it made the representation (*Id*.)  Furthermore, the amended complaint alleges Associated Construction reasonably relied upon those representations because it made payments to Intext for the Sheetrock Work, which "were approved in reliance on Mr. Adam's representation [on behalf of Lighthouse] that there was enough money left to finish the Project."  (*Id*. at ¶ 75.)  Moreover, as a result of Lighthouse's alleged conduct, the amended complaint alleges that Associated Construction suffered pecuniary harm, specifically, that it made advance payments to Intext based on Lighthouse's representations at the May 8 meeting.  (*Id*.)  Thus, Associated Construction has plausibly stated a CUTPA claim based on a CUIPA violation.

Lighthouse offers four reasons why Associated Construction's CUTPA claim should fail. First, it argues that Associated Construction "fails to allege that Lighthouse's conduct was the proximate cause of the harm" it suffered.  (ECF No. 49-1 at 13.)  But the amended complaint alleges that Associated Construction made additional payments for the Sheetrock Work, which "were approved in reliance on Mr. Adam's representation [on behalf of Lighthouse] that there was enough money left to finish the Project" (ECF No. 43 at ¶ 75), and consequently, Associated

Construction lost money.  (*Id*. at ¶ 66.)  These allegations satisfy CUTPA's proximate causation requirement, i.e., Lighthouse's representation to Associated Construction about the availability of funds was a "substantial factor" in the resulting pecuniary loss to Associated Construction, which made payments to Intext in reliance on Lighthouse's representation.  *Artie's Auto Body, Inc. v. Hartford Fire Ins. Co.,* 287 Conn. 208, 218 (2008).  Second, Lighthouse argues that the amended complaint is "devoid" of allegations that Lighthouse's conduct violated "public policy" and "of any specific factual allegation that [Lighthouse's] conduct is immoral, unethical, oppressive, or unscrupulous."  (ECF No. 49-1 at 13.)  As discussed above, however, Associated Construction has plausibly alleged that Lighthouse's conduct violated public policy, namely section 38-816(1) of CUIPA.  A violation of CUTPA may rest on a violation of public policy alone.  *Daddona v. Liberty Mobile Home Sales, Inc.*, 209 Conn. 243, 254 (1988)("[A] violation of CUTPA may be established by showing…a practice amount[s] to a violation of public policy.").  Third, Lighthouse argues that Associated Construction "fails to identify which acts of Lighthouse, if any, constitute unfair or deceptive acts or practices"; as shown, that argument is without merit.  Fourth, Lighthouse argues that Associated Construction must make allegations about "general business practices" to sustain its CUIPA claim, but no such allegations are required for a CUIPA claim under Conn Gen. § 38a-816(1).  *Lees v. Middlesex Ins. Co.*, 229 Conn. 842, 847-48 (1994)("[A] claim under CUIPA predicated upon *alleged unfair claim settlement practices in violation of 38a-816(6)* requires proof that the unfair settlement practices were committed or performed with such frequency as to indicate a general business practice.")(emphasis added).  Associated Construction thus has stated a plausible CUTPA claim based on a CUIPA violation.

5. Count Four: CUIPA

Associated Construction also claims an independent CUIPA violation.  CUIPA, however, does not provide a private right of action.  *Lander v. Hartford Life & Annuity Ins. Co.*, 251 F.3d 101, 118 (2d Cir. 2001)("[M]ost federal and Connecticut state courts have determined that the Connecticut Unfair Insurance Practices Act…does not provide a private cause of action.").  Further, in this case, the CUTPA claim (count two) is already advancing the policies of CUIPA.  Thus, count four is dismissed.

**B. The Avalon Defendants' Motion to Dismiss[12]**

1. Count One: Breach of Contract

Associated Construction argues in its brief that the Avalon Defendants breached an oral contract with it.  (ECF No. 56 at 7-8); *see also* (ECF No. 43 at ¶ 29.)[13]  The Avalon Defendants argue that Associated Construction has not alleged facts showing that its claim for breach of an alleged oral contract with them is plausible.  (ECF No. 50-1 at 5.)  I agree.

---

[12] The Avalon Defendants include Mr. Adams and Avalon Risk LLC.  *See* note 1 *supra*.

[13] At times, Associated Construction suggests that its alleged oral contract was not only with the Avalon Defendants but also with Lighthouse.  *See, e.g.*, (ECF No. 56 at 8)("AC/AP sufficiently pled the existence of oral contract between AC/AP and the Adams Defendants …").  To the extent it argues that Lighthouse is liable for breach of an alleged oral contract, that argument fails because nowhere does the amended complaint allege the terms of any oral contract between Lighthouse and Associated Construction and nowhere does it allege that any such oral contract was supported by consideration.  Further, as discussed above, the complaint attaches a written agreement between Lighthouse and Intext intended to protect Hanover from the risk of having to fulfill its obligations to Associated Construction under the performance bonds.  That agreement is arguably inconsistent with any obligation by Lighthouse to inform Associated Construction – the party Hanover would have to make whole if its obligations under the performance bonds were triggered – of the financial condition of Intext.  *See Sazerac Co.*, 861 F. Supp. at 257 ("Additionally, if the allegations of a complaint are contradicted by documents made a part thereof, the document controls and the court need not accept as true the allegations of the complaint.").

The amended complaint mentions an "oral" agreement in two places.  First, in paragraph 29, it alleges that under "the oral agreement between the parties based upon which [Associated Construction] agreed to give the Subcontract to Intext, Hanover and the Adams Defendants had an implicit obligation to advise [Associated Construction] of Intext's fragile condition" once they learned of it the winter of 2013-14.  (ECF No. 43 at ¶ 29.)  Second, it alleges in the CUTPA count that the litany of acts Associated Construction contends violated CUIPA (and thus CUTPA) were "in derogation and willful disregard of [Associated Construction's] rights under the Performance Bonds and the oral agreement to provide the bonds and the DCA."  (*Id*. at ¶ 67.)  In addition, when construed in the light most favorable to Associated Construction, the allegations in paragraphs 19 and 45 also arguably refer to an oral contract.  (*Id*. at ¶ 19 ("At a meeting on October 9, 2013 in Stamford, Connecticut, Mr. Adams for the Adams Defendants and as an agent of Hanover, expressly and implicitly represented to [Associated Construction] the Surety [i.e., Hanover] would provide three performance bonds which would perform exactly as if a single performance bond had been issued for all the work."); ¶ 45 ("The Surety [i.e., Hanover] made an offer on October 9, 2013 to [Associated Construction] to provide a payment and performance bond, if [Associated Construction] accepted the ancillary support services defined in the DCA provided by Lighthouse and Avalon so that Intext could obtain the Subcontract" and "[a] significant provision of the offer was the requirement that Avalon support Intext and that Lighthouse administer the payments made by [Associated Construction] to Intext so that the money would be used first for the Project.")).

None of these allegations support a plausible breach of contract claim against the Avalon Defendants.  First, the only reasonably definite term of the alleged oral contract was a requirement that *Hanover*, the Surety, provide three performance bonds that would act as one.

This requirement imposed no obligation on the Avalon Defendants.  Adams was alleged to be

acting as Hanover's agent when he made this offer (*Id*. at ¶¶ 15, 19), and an agent is not

responsible for the contractual obligations of its principal.  *Rich-Taubman Associates v.

Commissioner of Revenue Services*, 236 Conn. 613, 619 (1996)("[u]nder the rules of agency,

unless otherwise agreed, a person making or purporting to make a contract with another as agent

for a disclosed principal does not become a party to the contract.")(internal quotation marks,

alterations, and citations omitted).  And the amended complaint nowhere pleads that Avalon

made any representation or undertook any obligation to provide the bonds.  Indeed, the amended

complaint nowhere pleads that Avalon promised to do or actually did anything – other than the

vague allegation that it was required "to support Intext" (*Id*. at ¶ 45), which is too indefinite to

plead a plausible breach of contract claim.  *Steinberg v. Reding*, 24 Conn. App. 212, 214

(1991)("[i]n order to form a binding and enforceable contract, there must exist an offer and an

acceptance based on a mutual understanding by the parties.  The mutual understanding must

manifest itself by a mutual assent between the parties.  *Further, the contract must be definite and

certain as to its terms and requirements*." (emphasis added)).  Nowhere, for example, does the

complaint explain what Avalon's "support" would consist of or how it breached this obligation.[14]

The only other specified term of the alleged oral contract – that the Avalon Defendants

(and Lighthouse, *see* note 13, *supra*) "had an implicit obligation to advise [Associated

---

[14] In its brief, Associated Construction argues, for the first time, that Avalon and Adams were "brokers in procuring the bonds" who "acted for AC/AP and Intext," as well as for Hanover. (ECF No. 56 at 9.)  No such allegation appears in the complaint, however, and Associated Construction may not amend its complaint by making new claims in its brief.  *Louis v. New York City Housing Authority*, 152 F. Supp.3d 143, 158 (S.D.N.Y. 2016)("[P]laintiffs cannot use their opposition to the motion to dismiss to raise new claims or arguments.").  The same point forecloses Associated Construction's new argument that Lighthouse owed duties to Associated Construction "through its parent company Avalon."  (ECF No. 56 at 10.)

Construction] of Intext's fragile condition" (ECF No. 43 at ¶ 29) – is similarly vague.  The complaint does not say when the Avalon Defendants undertook this obligation, and it does not plead any "definite and certain" details of this obligation, such as the circumstances under which it was triggered and what form the "advis[ing]" had to take.  Nor does it plead any facts suggesting that Associated Construction gave the Avalon Defendants any consideration to undertake this obligation – another fatal omission.  *Milford Bank v. Phoenix Contracting Grp., Inc.*, 143 Conn. App. 519, 529 (2013)("The doctrine of consideration is fundamental in the law of contracts, the general rule being that in the absence of consideration" a contract "is unenforceable.  Consideration consists of a benefit to the party promising, or a loss or detriment to the party to whom the promise is made.")(internal quotation marks, alterations, and citations omitted).

In short, the complaint does not plead facts to support a plausible breach of contract claim against the Avalon Defendants.

    2.  Count Three: "Bad Faith" (Breach of Covenant of Good Faith and Fair Dealing)

Associated Construction's "bad faith" claim against the Avalon Defendants – which, as noted above, I construe as a claim of breach of the covenant of good faith and fair dealing – fails for the same reason as its breach of contract claim: Associated Construction has not plausibly alleged the existence of an enforceable contract between it and the Avalon Defendants.  Without such a contract, there can be no cause of action for breach of the covenant of good faith and fair dealing.  *See Macomber v. Travelers Prop. & Cas. Corp.*, 261 Conn. 620, 638 (2002)(*"*[T[he existence of a contract between the parties is a necessary antecedent to any claim of breach of the duty of good faith and fair dealing.").

3.   Count Two: CUTPA

Associated Construction also brings a CUTPA claim against the Avalon Defendants.  As noted above, the claim in Count Two is based on alleged violations of CUIPA and, in particular, violations of Conn. Gen. Stat. § 38a-816(1).  With respect to this claim, I analyze each Avalon Defendant separately as I reach different conclusions as to whether Associated Construction has plausibly stated a CUTPA claim against Avalon and Adams.

a.   Avalon

As already noted, the amended complaint contains no specific allegations that Avalon did or did not do anything, except the vague claim that Avalon was "required [to] support Intext." (ECF No. 43 at ¶ 45.)  Other than that conclusory allegation, Avalon is referred to only as part of the "Adams Defendants"; no specific action is attributed to it.  The amended complaint therefore fails to plead facts suggesting that Avalon itself participated in a misrepresentation or tort.  *See J.M. v. Pleasant Ridge Union Sch. Dist.*, 2017 WL 117965, at *2 (E.D. Cal. Jan. 10, 2017 ("Failure to delineate conduct by a specific defendant prevents the court from drawing the reasonable inference that the specific defendant is liable for the claim alleged and justifies dismissal of the claim.")(citing cases).  Thus, Associated Construction's CUTPA claim against Avalon fails.[15]

b.   Adams

The amended complaint alleges Adams made three misrepresentations.  First, at the October 9, 2013 meeting, Adams misrepresented that the three bonds would function as a single bond, and that he lacked authority from Hanover to issue a single bond for the entire amount of

---

[15] The amended complaint does not allege that Adams was at any relevant time acting as the agent for Avalon, let alone that he was acting within the scope of his employment as such an agent.

the subcontracts.  (ECF No. 43 at ¶¶ 19, 62(g).)  Second, at the May 8, 2014 meeting, Adams

misrepresented that "the Surety would support Intext and enable Intext to complete the Sheetrock

Work on schedule for what [Associated Construction] agreed to pay Intext."  (*Id*. at ¶ 62(j).)

Third, also at the May 8, 2014 meeting, Adams misrepresented that "cash flow was not a

problem" – the same misrepresentation attributed to Lighthouse.  (ECF No. 43 at ¶ 32; *see id.* at

¶ 62(k)("Lighthouse … made representations … on May 8, 2014 that there were adequate funds

to complete the Project.").[16]

     The allegations concerning these misrepresentations are sufficient to allege a violation of

Conn. Gen. Stat. § 38a-816(1) and thus to state a claim under CUTPA.  As discussed above, to

state a violation of Conn. Gen. Stat. § 38a-816(1) , Associated Construction must allege "(1) that

the defendant made a misrepresentation of fact (2) that the defendant knew or should have

known was false, and (3) that the plaintiff reasonably relied on the misrepresentation, and (4)

suffered pecuniary harm as a result."  *Nazami*, 280 Conn. at 626.  The allegations satisfy those

elements.  The amended complaint alleges that Adams made misrepresentations of fact about

how the bonds would function and what his authority was with respect to the number of bonds,

about the extent to which Hanover would enable Intext to complete the work on schedule, and

about Intext's financial condition.  It also alleges that he should have known that these

---

[16] Other than representatives of Associated Construction, Adams is the only individual who is
alleged to have attended the May 8, 2014 meeting.  (ECF No. 43 at ¶ 32.)  Although the amended
complaint alleges that Adams "attended as a representative of the Surety," it elsewhere alleges
that Lighthouse made representations about Intext's financial condition at the May 8, 2014
meeting, representations it could only have made through Adams, its sole member.  (*Id.* at ¶¶
62(k); 3.)  Further, as noted above, Lighthouse received funds from Associated Construction on
behalf of Intext related to the Project and thus would be in a position to know whether there were
"adequate funds to complete the Project." (*Id.* at ¶ 62(k)).  Thus, I construe the allegation about
the misrepresentations made at the May 8 meeting concerning the funds to complete the Project
and Intext's financial condition to allege that Adams made such misrepresentations on behalf of
both Lighthouse and Hanover.

representations were false because he was "the administrator of [the] program established by [Hanover]" who had "been in business for over 25 years," was authorized by a power of attorney given by Hanover, and was the principal of Lighthouse, which was managing Intext's receipts from the project.  (*Id*. at ¶¶ 14; 3, 19.)  Further, the amended complaint alleges that Associated Construction reasonably relied on Adam's representations.  (*Id*. at ¶ 24)("As a result and in reliance upon the representations made by Mr. Adams at the October 8, 2013 meeting, Intext and [Associated Construction] signed the [s]ubcontracts…"); (*Id*. at ¶ 75)(Associated Construction "approved payments [for Intext]" based on the representations at the May 8, 2014 meeting.)  The amended complaint also alleges that Associated Construction incurred damages as result of these misrepresentations.  (*Id*. at ¶¶ 66, 68.)  Thus Associated Construction has plausibly stated a violation of CUIPA, which may be enforced under CUTPA.[17]

Finally, the fact that Adams was acting as an agent when he made these misrepresentations does not save him from liability.  Under Connecticut law, "an agent…[who] commits or participates in the commission of a tort, whether or not he acts on behalf of his principal…is liable to third persons injured thereby."  *Ventres v. Goodspeed Airport, LLC*, 275

---

[17] Avalon argues that Associated Construction's negligent misrepresentation claims are subject to the heightened pleading requirements of Fed. R. Civ. P.  9(b).  (ECF No. 50-1 at 9-10.)  The Second Circuit has held that negligent misrepresentation claims under New York law are subject to Rule 9(b)'s heightened pleading requirement.  *See  Aetna Casualty & Surety Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 583 (2d Cir. 2005)( holding New York state law negligent misrepresentation claim "must be pled in accordance with the specificity criteria of Rule 9(b).").  "However, courts in this district have concluded that Rule 9(b) does not apply to claims of negligent misrepresentation under Connecticut law."  *Lentini v. Fid. Nat. Title Ins. Co. of N.Y.*, 479 F. Supp.2d 292, 298 n. 2 (D. Conn. 2007)(citing cases).  Accordingly, Rule 9(b) does not apply to Associated Construction's CUTPA claim.  In any event, the amended complaint's allegations appear to satisfy Rule 9(b)'s requirements, because they "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994).

Conn. 105, 141–42 (2005); *Cohen v. Roll-A-Cover, LLC*, 131 Conn. App. 443, 468 (2011)(an agent "who commits the tort or who directs the tortious act done, or participates or operates therein, is liable to third persons injured thereby, even though liability may also attach to the [principal] for the tort."); *see also* Second Restatement of Agency § 348 ("An agent who fraudulently makes representations, uses duress, or knowingly assists in the commission of tortious fraud or duress by his principal or by others is subject to liability in tort to the injured person although the fraud or duress occurs in a transaction on behalf of the principal.").  With respect to the first two misrepresentations concerning the number of bonds and Hanover's commitment to ensure the project was timely completed, Adams was acting as an agent of Hanover; with respect to the third concerning Intext's financial condition, he was acting as the agent of both Hanover and Lighthouse.  (*See* note 16, *supra*.)  Though Adams was acting as an agent, Associated Construction alleges that he personally committed the misrepresentations; he therefore may be held liable for the misrepresentations under CUTPA.  *See Cohen*, 131 Conn. App. at 468–69 (holding corporate officer liable under CUTPA for fraudulent misrepresentations made in course of selling franchises because he had personally made those misrepresentations).

4.   Count Four: CUIPA

Associated Construction's CUIPA claim against the Adams Defendants fails for the same reason as it did against Lighthouse: there is no private right of action under CUIPA.

**V.   Conclusion**

Lighthouse's and the Avalon Defendants' motions to dismiss are GRANTED IN PART AND DENIED IN PART.  All claims against Avalon are dismissed.  The breach of contract (count one), breach of the covenant of good faith and fair dealing (count three), and CUIPA (count four) claims against Lighthouse and Scott Adams are dismissed.  The CUTPA (count two)

claims against Lighthouse and Adams survive, together with all of the claims against Hanover, which has not moved to dismiss.  As all claims against Avalon have been dismissed, the Clerk is directed to terminate Avalon from the case.

IT IS SO ORDERED.


/s/_____
Michael P. Shea, U.S.D.J.


Dated:          Hartford, Connecticut
               March 30, 2017