UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ASSOCIATED CONSTRUCTION / AP CONSTRUCTION, LLC<br>    Plaintiff,<br><br>v.<br><br>THE HANOVER INSURANCE COMPANY, et al.<br>    Defendants. | No. 3:15-cv-1600 (MPS) |

I. **Introduction**

This lawsuit arises out of surety bonds issued for a construction project in Stamford, Connecticut. Associated Construction / A.P. Construction, LLC ("Associated Construction"), a construction contractor, alleges that the issuer of the bonds, Hanover Insurance Company ("Hanover" or the "Surety"), and its alleged agents, Scott Adams, Avalon Risk, LLC ("Avalon"), and Lighthouse Management, LLC ("Lighthouse"), failed to perform under the bonds and other related contracts and made misrepresentations in connection with the project. Defendant Adams filed a third-party complaint against Woodrow Baird and Alliant Insurance Services, Inc. (collectively, "Alliant Defendants") for their alleged role in the issuance of the bonds, seeking indemnification, or in the alternative, contribution on a proportionate basis with regard to all claims brought against Adams by Associated Construction. Now before me is a motion for summary judgment brought by the Alliant Defendants against Adams. (ECF No. 148). For the reasons that follow, the motion is GRANTED IN PART AND DENIED IN PART. The motion is granted with respect to Adams's indemnification and "comparative indemnity" claims. Further, for the reasons explained below, within 14 days of this ruling, Adams shall show cause

1

why I should not grant summary judgment as to the contribution claim on the ground that the Court has yet to issue a judgment against him.

## II. Background

### a. Factual Background

The following facts, which are taken from the parties' Local Rule 56(a) Statements and the exhibits, are undisputed unless otherwise indicated. Associated Construction "was engaged to construct a residential housing project in Stamford, Connecticut known as Park Square West Phase 2 ('the project')." (ECF No. 149, Alliant Defendants' Local Rule 56(a)1 Statement ("Def.'s L.R. 56(a)1 Stmt.") ¶ 1); ECF No. 177-1, Adams's Local Rule 56(a)2 Statement ("Pl.'s L.R. 56(a)2 Stmt.") ¶ 1.) To facilitate this project, Associated Construction engaged Intext Building Systems, LLC ("Intext") as a subcontractor to perform certain work. (Def.'s L.R. 56(a)1 Stmt. at ¶ 2; Pl.'s L.R. 56(a)2 Stmt. at ¶ 2.)[1] "As a condition of entering into a subcontract with Intext, [Associated Construction] required that Intext furnish a payment and performance bond to provide assurance that Intext would perform [the work that it had contracted with Associated Construction to provide] and pay for all material and labor incidental thereto." (Def.'s L.R. 56(a)1 Stmt. at ¶ 3; Pl.'s L.R. 56(a)2 Stmt. at ¶ 3.) "Prior to the instant transaction, [third-party defendant Woodrow] Baird had acted as insurance broker and bonding agent for [Associated Construction]."[2] (Def.'s L.R. 56(a)1 Stmt. at ¶ 5; Pl.'s L.R. 56(a)2 Stmt. at

---

[1] The parties dispute the agreed upon price for Intext's services. (*Compare* Def.'s L.R. 56(a)1 Stmt. at ¶ 2 (averring that Associated Construction agreed to pay Intext $3,868,000.00 for its services) *with* Pl.'s 56(a)1 Stmt. at ¶ 2 (stating that Associated Construction agreed to pay Intext approximately $4.5 million for its services).) I need not resolve this dispute as it is not material.

[2] Adams objects to this statement on the basis that it is incomplete but does not contest its accuracy. (*See* Pl.'s L.R. 56(a)2 Stmt. at ¶ (noting that Adams "[a]dmit[s] and [o]bject[s]" to this statement).)

2

¶ 5). As such, "Associated [Construction] asked Baird to assist Intext in obtaining the necessary bonds." (Def.'s L.R. 56(a)1 Stmt. at ¶ 6; Pl.'s L.R. 56(a)2 Stmt. at ¶ 6.)

Baird "introduced Intext to Adams," the president of Avalon, which was an agent of Hanover; Adams operated an "emerging contractors program" that Baird thought might issue bonds to Intext. (Def.'s L.R. 56(a)1 Stmt. at ¶¶ 7-8; Pl.'s 56(a)2 Stmt. at ¶¶ 7-8.) Adams instructed Baird that Avalon "had authority to issue bonds on behalf of Hanover up to a single limit of $2 million and an aggregate limit of $4 million." (Def.'s L.R. 56(a)1 Stmt. at ¶ 10; Pl.'s L.R. 56(a)1 Stmt. at ¶ 10.) Based upon these limitations, Associated Construction and Intext "agreed to unbundle the subcontract into three separate subcontracts." (Def.'s L.R. 56(a)1 Stmt. at ¶ 13; Pl.'s L.R. 56(a)2 Stmt. at ¶ 13.) Baird "submitted bond applications on behalf of Intext[3] . . . to Adams." (Def.'s L.R. 56(a)1 Stmt. at ¶ 14; Pl.'s L.R. 56(a)2 Stmt. at ¶ 14.) Baird "served as the conduit for communication between Intext . . . and Adams," and in this capacity "forwarded to Adams . . . from Intext . . . information regarding its financial condition and prior performance of its work." (Def.'s L.R. 56(a)1 Stmt. at ¶ 15; Pl.'s L.R. 56(a)2 Stmt. at ¶ 15.) Adams does not recall "any specific representations made to him by Baird as to Intext's prior performance of its work" and believed, based upon Baird's forwarding of information from Intext, "that Intext had significant experience in sizeable projects for institutional owners and therefore was competent to perform its job for [Associated Construction]." (Def.'s L.R. 56(a)1 Stmt. at ¶¶ 17-18; Pl.'s L.R. 56(a)2 Stmt. at ¶¶ 17-18.)

---

[3] Baird also submitted bond applications on behalf of IBS Contracting, LLC ("IBS"), an entity affiliated with Intext. (Def.'s L.R. 56(a)1 Stmt. at ¶ 14; Pl.'s L.R. 56(a)2 Stmt. at ¶ 14.) Since the difference between Intext and IBS is not relevant to my ruling, I refer to the entities collectively as "Intext" through the remainder of this ruling.

A meeting including Adams, Baird, and various members of Associated Construction management took place on October 9, 2013. (Def.'s L.R. 56(a)1 Stmt. at ¶¶ 24-28; Pl.'s L.R. 56(a)1 Stmt. at ¶¶ 24-28.) Associated Construction later alleged that Adams made a false representation at this meeting "that Hanover would provide three performance bonds which would perform exactly as if a single performance bond had been issued for the entire amount of the subcontract, but [that] Adams could issue the three bonds and achieve the same result." (Def.'s L.R. 56(a)1 Stmt. at ¶ 23; Pl.'s L.R. 56(a)2 Stmt. at ¶ 23.) Baird, who was present at the meeting, "did not hear Adams state that the three bonds [issued to Intext] would act as one bond." (Def.'s L.R. 56(a)1 Stmt. at ¶ 24; Pl.'s L.R. 56(a)2 Stmt. at ¶ 24.) Adams could not recall whether Baird "made any statements at the . . . meeting on the subject of whether the three bonds would act as one bond." (Def.'s L.R. 56(a)1 Stmt. at ¶ 25; Pl.'s L.R. 56(a)2 Stmt. at ¶ 25.) Baird then submitted three bonds to Avalon, and Adams signed the bonds on behalf of Hanover. (Def.'s L.R. 56(a)1 Stmt. at ¶ 29; Pl.'s L.R. Stmt. at ¶ 29.)

The parties noted above had another meeting on May 8, 2014. (Def.'s L.R. 56(a)1 Stmt. at ¶¶ 32-35; Pl.'s L.R. 56(a)2 Stmt. at ¶¶ 32-35.) Associated Construction later alleged that Adams falsely represented to it at this meeting "that cash flow was not a problem for Intext and that Hanover would support Intext so that Intext would be able to complete [its work for Associated Construction] on schedule."[4] (Def.'s L.R. 56(a)1 Stmt. at ¶ 31; Pl.'s 56(a)2 Stmt. at ¶ 31.) Baird, who was present at the meeting, "did not hear Adams make the statement alleged by [Associated Construction] to be false." (Def.'s L.R. 56(a)1 Stmt. at ¶ 32; Pl.'s L.R. 56(a)2 Stmt.

---

[4] Adams objects to the veracity of Associated Construction's allegations but does not contest that such allegations were made. (*See* Pl.'s L.R. 56(a)2 Stmt. at ¶ 31.)

at ¶ 32). Adams "does not recall anything that Baird said at the . . . meeting." (Def.'s L.R. 56(a)1 Stmt. at ¶ 33; Pl.'s L.R. 56(a)2 Stmt. at ¶ 33.)

### b. Associated Construction's Claims Against Adams

Although the parties dispute the exact characterization of subsequent events, they agree that Associated Construction eventually alleged that it "terminated the subcontracts with Intext on July 15, 2014 and made demand on Hanover to perform under the performance bonds, but Hanover refused." (Def.'s L.R. 56(a)1 Stmt. at ¶ 39; Pl.'s L.R. 56(a)2 Stmt. at ¶ 39.) Associated Construction also "alleges that as a direct, proximate and foreseeable result of Adams'[s] misrepresentations, which constituted a violation of [the Connecticut Unfair Trade Practices Act ("CUTPA")], it suffered damages of more than $6 million, including additional expense to complete the [work that it had contracted with Intext for], loss of profit . . . and direct and indirect overhead." (Def.'s L.R. 56(a)1 Stmt. at ¶ 40; Pl.'s L.R. 56(a)2 Stmt. at ¶ 40.)[5] In its complaint, Associated Construction alleges that Adams's misrepresentations noted above were intentional. (*See* ECF 150-2, Exhibit A ("Associated Construction's Complaint") at ¶ 67 ("The conduct alleged [within its CUTPA count against Adams] was intentional.").) It also sets out a claim of bad faith against Adams predicated upon his alleged misrepresentation at the May 8, 2014 meeting. (*See id.* at ¶ 75.)

### c. Third-Party Complaint

After Associated Construction brought suit, Adams filed a third-party complaint against the Alliant Defendants "seeking indemnification, or in the alternative[], contribution on a proportionate basis with regard to all claims brought against Adams by [Associated

---

[5] Adams disputes the accuracy of Associated Construction's allegations but once again does not dispute that the allegations were made. (Pl.'s L.R. 56(a)2 Stmt. at ¶¶ 39-40.)

5

Construction]." (*See* ECF No. 150-3, Exhibit B at 16.) In his third-party complaint, Adams alleges that the Alliant Defendants "were negligent, misrepresented certain facts, breached fiduciary duties, and breached contracts and/or agreement[s], and that such aforementioned acts were the proximate cause of [Associated Construction's] alleged damages and/or losses." (*Id.* at 17.) The complaint goes on to note that any liability Adams might have to Associated Construction would "be the direct and proximate result of the active and affirmative conduct on the part [the Alliant Defendants]." (*Id.*) As such, Adams brings claims against the Alliant Defendants for indemnity, comparative indemnity, and contribution. (*Id.* at 17-19.) He also seeks a declaratory judgment as to "the rights, responsibilities and obligations of the [Alliant Defendants] as to [Adams's] Third[-]Party Complaint."[6] (*Id.* at 19.)

### III. Standard of Review

Summary judgment is appropriate only when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In making that determination, a court must view the evidence in the light most favorable to the opposing party." *Tolan v. Cotton,* 134 S.Ct. 1861, 1866 (2014) (internal quotation marks omitted). "A fact is material if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotation marks omitted). The moving party bears the burden "of showing that no genuine factual dispute exists . . . , and in assessing the record to determine whether there is a genuine issue as to any material fact, the court is required to resolve

---

[6] Since Adams's claim for declaratory relief is entirely duplicative of the other counts in his third-party complaint, I do not separately address it in this ruling.

all ambiguities and draw all factual inferences" in favor of the non-moving party. *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203 (2d Cir. 1995).

## IV. Discussion

### a. Adams's Indemnification Claim

Under Connecticut law, there is ordinarily "no right of indemnity or contribution between joint tort-feasors." *Kyrtatas v. Stop & Shop, Inc.*, 205 Conn. 694, 697 (1988) (quoting *Caviote v. Shea*, 116 Conn. 569, 575 (1933)). "Where, however, one of the defendants is in control of the situation and his negligence alone is the direct immediate cause of the injury and the other defendant does not know of the fault, has no reason to anticipate it and may reasonably rely upon the former not to commit a wrong, it is only justice that the former should bear the burden of damages due to injury." *Id.* (quoting *Preferred Accident Ins. Co. v. Musante, Berman & Steinberg Co.*, 133 Conn. 536, 543 (1947)). In such cases, Connecticut law distinguishes between "'active or primary negligence,'" and "'passive or secondary negligence'"—"[i]ndemnity shifts the impact of liability from passive joint tortfeasors to active ones." *Id.* (quoting *Kaplan v. Merberg Wrecking Corporation*, 152 Conn. 405, 415 (1965)). To establish a claim for common law indemnification, a party must demonstrate the following four elements: "(1) that the other tortfeasor was negligent; (2) that [that] negligence, rather than [the party's], was the direct, immediate cause of the accident and injuries; (3) that [the other tortfeasor] was in control of the situation to the exclusion of [the party]; and (4) that [the party] did not know of such negligence, had no reason to anticipate it, and could reasonably rely on the other tortfeasor not to be negligent." *Skuzinski v. Bouchard Fuels, Inc.* 240 Conn. 694, 698 (1997) (quoting *Kyrtatas*, 205 Conn. at 698.)

7

The Alliant Defendants argue that Adams's indemnification claim fails because Associated Construction's claim against Adams alleges solely intentional wrongful conduct. (ECF No. 150 at 15). They also contend that the claim would fail in any event because Adams cannot meet the first, second, or third prong of the test set out above. (*Id.*) Since I agree with the former ground, I do not reach the latter. As an initial matter, the parties do not—and cannot—dispute that Adams has been accused only of intentional wrongful conduct. As noted above, Associated Construction's complaint alleges that Adams made intentional misrepresentations. (*See* Associated Construction's Complaint at ¶¶ 62 (alleging Adams made misrepresentations at October 9, 2013 and May 8, 2014 meetings), 67 (alleging that this conduct was intentional), 75 (reiterating allegation that Adams made intentional misrepresentation at May 8, 2014 meeting).)

While the Court is unaware of—and the parties do not cite—any Connecticut appellate court decision addressing specifically whether a party may seek indemnification for intentional conduct, the more persuasive reading of Connecticut law supports the Alliant Defendants' position. First, the exception to the general rule against indemnification is couched in terms of negligence. The exception distinguishes between "active or primary negligence" and "passive or secondary negligence," and also applies only when a third-party plaintiff can establish that the other tortfeasor's "negligence, rather than the [third-party] plaintiff's, was the direct, immediate cause of the accident and injuries." *Kyrtatas*, 205 Conn. at 698 (internal quotation marks omitted). These references suggest that the exception may be invoked only by negligent third-party plaintiffs and then only if they were "passively negligent."

Second, the Connecticut Supreme Court has previously suggested that parties cannot avail themselves of indemnification for intentional misconduct. The exception to the general rule against indemnification listed above originates, at least in part, from the Connecticut

Supreme Court's decision in *Preferred Accident Insurance Co. of N.Y. See* 133 Conn. at 542 ("The plaintiff in an action against [a] contractor cannot recover unless he shows that the active negligence and wrong which caused [a]n injury in question were the negligence and wrong of the defendant or, in other words, that the defendant was the party primarily liable for the wrongful act which occasioned the injury in respect of which the plaintiff has been compelled to pay damages." (internal quotation marks omitted)). The *Preferred* court noted, however, that "the applicability of this rule is negatived, wherever it appears that the party seeking indemnity was himself guilty of affirmative misconduct which was a proximate cause of the injury in question." *Id.* at 542; *see also id.* at 543 ("Where there are two joint tort-feasors and each is guilty of intentional wrongdoing there may be sound justification for a denial of contribution because either party in seeking it would have to take his stand upon his own wrong. We have held that where the negligence of each of two defendants enters immediately and directly into the production of the accident neither should have a right to contribution."). As several Superior Court cases have noted, this reasoning strongly suggests that a party sued for an intentional tort cannot avail itself of indemnification.[7] *See Lassow v. Jefferson Pilot Fin. Ins. Co.*, No. CV010807131S, 2003 WL 22206242, at *9 (Conn. Super. Ct. Sept. 8, 2003) ("Following [the Connecticut Supreme Court's reasoning in *Preferred Accident Ins. Co.*], other courts have stated that there can be no indemnification [for intentional torts]."); *Siegel v. Kaesser Const. Co.*, No.

---

[7] It is also worth noting that Connecticut has a public policy against allowing parties to contract for indemnity for intentional or reckless and wanton misconduct. *See, e.g.*, *Wright v. Town of Willington*, No. X09CV065008202, 2007 WL 4801438, at *2 (Conn. Super. Ct. Dec. 13, 2007) (noting existence of public policy against contracts by which party would be indemnified for its intentional or reckless and wanton misconduct). Permitting the shifting of liability to third-parties for intentional wrongdoing would necessarily undermine this "public policy of deterring and penalizing intentional misconduct . . . ." *Id.* (quoting *Friedman v. Hartman*, 787 F. Supp. 411, 422 (S.D.N.Y. 1992)).

CV90268803, 1991 WL 35582, at *2 (Conn. Super. Ct. Mar. 5, 1991) (rejecting indemnification claim brought by party accused of CUTPA violation in part on basis of *Preferred Accident Ins. Co.*).

Third, the Connecticut Superior Court decisions on point have held that a party accused solely of intentional conduct cannot maintain a common-law indemnification action. *See Peterson v. Hume*, No. HHDCV115035394S, 2015 WL 1919433, at *5 (Conn. Super. Ct. Mar. 30, 2015) ("[T]he majority of Superior Court Judges who have addressed the issue have held that there is no common-law action for indemnification when the first-party action is based solely on intentional conduct."); *Wood v. Club, LLC*, No. FSTCV136016946S, 2013 WL 6912874, at *3 (Conn. Super. Ct. Nov. 29, 2013) ("Although there is an 'absence of any controlling [a]ppellate authority' regarding whether a claim of indemnification can be brought for intentional torts, 'the majority [of Superior Courts] view that there is no common-law action for indemnification for intentional tortious conduct.'" (quoting *Martel v. Burkamp*, No. CVH 7684, 2009 WL 2243768, at *2 (Conn. Super. Ct. July 23, 2009)); *Herrera v. Adams*, No. CV106004615, 2011 WL 6756914, at *4 (Conn. Super. Ct. Nov. 30, 2011) ("Although the appellate case law does not explicitly limit common-law indemnification to negligence cases only, the majority of trial court decisions find that there is no common-law indemnification for intentional tortious conduct." (internal citations omitted)).[8]

---

[8] Although some of these cases refer to a "majority" of Connecticut Superior Court decisions, none cites a case that actually reflects a contrary view, i.e., a view that a person sued solely for intentional wrongdoing may seek indemnity under the common law from a third party. Some of these cases suggest that *Shelby Ins. Co. v Castellon*, 2000 WL 775506, No. CV 980416779S (May 26, 2000) reflects such a view, but it does not. The decision in that case indicates that parties seeking an indemnity had been sued for negligence arising from a fire at their business premises that had damaged neighboring businesses. *Id.* at *1. Those parties sought indemnity from the Fire Marshal who argued, among other things, and for reasons that are unclear from the decision, that "indemnification is limited to negligence actions." *Id.* at 2.

The two Connecticut Superior Court decisions Adams cites are not to the contrary. (*See* ECF No. 177 at 4 (citing *A & G Contracting, Inc. v. Design/Build Collaborative, LLC*, No. CV106008755, 2012 WL 4377775, at *3 (Conn. Super. Ct. Aug. 23, 2012); *Segway, Inc. v. Special Olympics Connecticut, Inc.*, No. CV116022089S, 2015 WL 1244509, at *9 (Conn. Super. Ct. Feb. 23, 2015).) Both *A & G Contracting, Inc.*, and *Segway, Inc.* are premised on the principle that a third-party *defendant* should not be able to escape liability for common law indemnity by virtue of the fact that it was accused of reckless or intentional tortious conduct. *See A & G Contracting, Inc.*, 2012 WL 4377775 at *3 ("Public policy disfavors intentional torts in general and fraudulent misrepresentation in particular. Equity requires that a negligent tortfeasor has a right to indemnity from an intentional tortfeasor." (internal quotation marks omitted)); *Segway, Inc.*, 2015 WL 1244509, at *9 ("Indemnification is grounded in principles of equity. To adopt the defendants' position would shield tortfeasors from liability for their reckless conduct via an indemnification action. It would also preclude parties from recovering for the reckless conduct of others. This is contrary to equity."). The reasoning of these cases is inapplicable to this case, both because Adams himself has been accused of intentional misconduct and because he has not alleged that the Alliant Defendants engaged in intentional or reckless misconduct. (*See* ECF No. 177 at 10 (arguing that "Alliant was actively negligent")).

---

The court declined to grant the Fire Marshal summary judgment on this ground, however, reasoning that while "the principal modern cases in Connecticut that have considered indemnification have done so in the active/passive negligence context . . ., [t]hose cases do not . . . explicitly limit common law indemnification to negligence actions only." *Id.* (internal citations omitted). The court then noted that the Restatement (Second) Torts "does not contain this limitation" and "recognizes that cases have permitted indemnity in situations . . . *in which a negligent party seeks indemnification from a party who acted recklessly.*" *Id.* (emphasis added). In other words, even the *Castellon* court's view that common law indemnity may be available outside the negligence context envisaged reckless or intentional conduct by third-party *defendants*, not by the party seeking indemnity.

11

For these reasons, the Alliant Defendants are entitled to summary judgment on Adams's indemnification claim.

### b. Adams's Claim for Comparative Indemnity

Adams's third-party complaint alleges "comparative indemnity" against the Alliant Defendants, but does not cite any legal or statutory basis for such an action. (*See* ECF No. 106 at 18.) I am unaware of any Connecticut case law using the term, "comparative indemnity." In Adams's response to the Alliant Defendants' motion for summary judgment, however, he invokes Conn. Gen. Stat. § 52-572h. I therefore conclude that Adams's claim must be based upon Conn. Gen. Stat. § 52-572h. That statute provides that "[i]n a negligence action to recover damages resulting from personal injury, wrongful death or damage to property . . . , if the damages are determined to be proximately caused by the negligence of more than one party, each party against whom recovery is allowed shall be liable to the claimant only for such party's proportionate share of the recoverable economic damages and the recoverable noneconomic damages . . . ." Conn. Gen. Stat. § 52-572h(c). The Alliant Defendants contend that Adams's comparative indemnity claim fails because § 52-572h does not apply to purely commercial losses or intentional torts. (*See* ECF No. 150 at 17; ECF No. 187 at 10-11). I agree with the second contention and therefore do not address the first.

As an initial matter, Adams's claim for "comparative indemnity" under § 52-572h presents a contradiction in terms. In *Kyrtatas*, the Connecticut Supreme Court distinguished between the concepts of indemnification and contribution, noting that:

> Comparative responsibility is inconsistent with indemnification because the former allows a jury to assign liability in specific proportion among several defendants on the basis of the evidence presented while the latter doctrine arose in response to the common law prohibition against contribution, and applies only in situations in which a passive joint tortfeasor has no actual responsibility for a tort. . . . [I]ndemnity involves a claim for reimbursement in full from one on whom a

> primary liability is claimed to rest, while contribution involves a claim for reimbursement of a share of a payment necessarily made by the claimant which equitably should have been paid in part by others.

205 Conn. at 700-01. As the passage above demonstrates, Connecticut law does not recognize the concept of "comparative indemnity" because indemnification is a zero sum game. A party seeking indemnification pursues the shifting of the entirety of a liability—not an apportionment. Thus, Connecticut law recognizes no claim of "comparative indemnity."

Even if a claim for "comparative indemnity" under § 52-572h did exist,[9] it would not help Adams. The statutory text of § 52-572h expressly limits comparative negligence claims to "negligence actions." *See Belanger v. Vill. Pub I, Inc.*, 26 Conn. App. 509, 513 (1992) ("[A]ccording to its plain language, § 52-572h applies only to negligence actions."). As noted above, Adams is accused only of intentional torts. He therefore cannot avail himself of the doctrine of comparative negligence under Connecticut law. *See Kramer v. Petisi*, 285 Conn. 674, 684 (2008) (concluding that party accused of fraudulent misrepresentation could not avail herself of comparative negligence under § 52-572h because "fraudulent misrepresentation is an intentional tort").

I therefore grant the Alliant Defendants' motion for summary judgment with respect to Adams's claim for comparative indemnity.

### c. Adams's Contribution Claim

"Contribution is a payment made by each, or by any, of several having a *common interest or liability* of his share in the loss suffered, or in the money necessarily paid by one of the parties in behalf of the others." *Crotta v. Home Depot, Inc.*, 249 Conn. 634, 639 (internal quotation

---

[9] It is also worth noting that § 52-572h expressly makes no change to the common law of indemnification: "[t]his section shall not impair any right to indemnity under existing law." Conn. Gen. Stat. § 52-572h(j).

marks omitted). "The right of action for contribution, which is equitable in origin, arises when, as between multiple parties jointly bound to pay a sum of money, one party is compelled to pay the entire sum. That party may then assert a right of contribution against the others for their proportionate share of the common obligation." *Kaplan v. Merberg Wrecking Corp.*, 152 Conn. 405, 412 (1965). The Connecticut Supreme Court has cautioned, however, that "a tortfeasor compelled to discharge a liability for a tort cannot recover contribution from a joint tortfeasor whose participation therein gave the injured person no cause of action against him, since the element of common liability of both tortfeasors to the injured person, essential to the right of contribution, is lacking in such cases." *Crotta*, 259 Conn. at 639 (internal quotation marks and emphases omitted).

The Alliant Defendants' main argument for summary judgment with respect to Adams's contribution claim is that Associated Construction did not file any claims against them. (*See* ECF No. 150 at 16 ("Since [Associated Construction] has not asserted any claim against [the Alliant Defendants], Adams'[s] claim for contribution must fail.").) The Alliant Defendants base this argument on the Connecticut Supreme Court's holding in *Crotta*. *Crotta* concerned, in relevant part, whether the doctrine of parental immunity precluded a parent of a minor plaintiff from being joined as a third-party defendant for purposes of contribution. *Crotta¸* 249 Conn. at 635. The *Crotta* court held that it did. *Id.* In reaching this conclusion, the *Crotta* court noted—as quoted above—that "a tortfeasor compelled to discharge a liability for a tort cannot recover contribution from a joint tortfeasor whose participation therein gave the injured person *no cause of action against him.*" *Id.* (emphasis added). This passage, the Alliant Defendants contend, implies that Associated Construction's lack of claims against them precludes Adams's contribution claim. (*See* ECF No. 150 at 16 (quoting *Crotta* in advancing this argument).)

14

The Alliant Defendants' invocation of *Crotta* is unavailing, however, due to the distinction between a cause of action and actually bringing a claim. Associated Construction's failure to bring a claim against the Alliant Defendants does not mean that it does not have a *cause of action* against them. The context of the *Crotta* case exemplifies this distinction. The *Crotta* court held that a third-party plaintiff had no right of contribution against a parent of a minor first-party plaintiff because the parent was not "originally liable to the plaintiff." *Crotta*, 249 Conn. at 634. In other words, the minor plaintiff could not have brought an action against the parent due to the doctrine of parental immunity. This situation is readily distinguishable from the present case, as the Alliant Defendants have failed to assert any similar such immunity to any claims brought by Associated Construction. Thus, *Crotta* does not help the Alliant Defendants.

Although the Alliant Defendants' main argument does not warrant summary judgment as to Adams's contribution claim, there is another ground upon which Adams's contribution claim appears to fail: ripeness. A right of contribution arises only after a judgment has been rendered. *See Hanover Ins. Co. v. Fireman's Fund Ins. Co.*, 217 Conn. 340, 353 (1991) ("The right of action for contribution . . . arises when, as between multiple parties jointly bound to pay a sum of money, one party is compelled to pay the entire sum. That party *may then assert* a right of contribution against the others for their proportionate share of the common obligation." (emphasis added)); *Gladding v. Saren*, No. CV97327219S, 1997 WL 746401, at *5 (Conn. Super. Ct. Nov. 21, 1997) (rejecting claim for contribution as premature "because there has been neither a determination of the proportionate share of damages, nor has [the party claiming contribution] made any payment in excess of her proportionate share of the plaintiff's claim"); *Simon v. My Bread Baking Co.*, No. CV 980165440, 1999 WL 966614, at *1 (Conn. Super. Ct.

15

Oct. 14, 1999) ("Since this case has not reached a final judgment, the third-party plaintiffs have not stated a legally sufficient cause of action for contribution at this time.").

But as noted above, this ground was not raised by the Alliant Defendants, and under Rule 56(f) of the Federal Rules of Civil Procedure, I may grant summary judgment on a ground not raised by a party only "[a]fter giving notice and reasonable time to respond." Fed. R. Civ. P. 56(f); *see also Wiley v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015) ("Rule 56 does permit a sua sponte grant of summary judgment dismissing a claim—but only under certain conditions . . . Rule 56(f) permits a district court to grant summary judgment on grounds not raised by a party . . . [b]ut a district court may do so only after giving notice and reasonable time to respond.") (internal quotation marks, alterations, and citations omitted). Therefore, I will defer ruling on the contribution claim until both parties have had an opportunity to brief this issue in accordance with my instructions set forth in the Conclusion below.

## V. Conclusion

For the reasons set forth above, the Alliant Defendants' motion for summary judgment (ECF No. 148) is granted with respect to Adams's indemnification and comparative indemnity claims. With respect to Adams's contribution claim, within **fourteen (14) days** of this order, Adams shall show cause why I should not grant summary judgment as to the contribution claim on the ground that the Court has yet to issue a judgment against him. The Alliant Defendants shall then have **fourteen (14) days** to file a response to Adams's brief. No replies will be permitted.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut
August 7, 2018