UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| ASSOCIATED CONSTRUCTION / AP CONSTRUCTION, LLC  Plaintiff, | |
|---|---|
| v. | No. 3:15-cv-1600 (MPS) |
| THE HANOVER INSURANCE COMPANY, et al.  Defendants. | |

## RULING ON MOTION FOR SUMMARY JUDGMENT

### I.  Introduction

This lawsuit arises out of surety bonds issued for a construction project in Stamford, Connecticut.  Associated Construction / A.P. Construction, LLC ("Associated Construction"), a construction contractor, alleges that the issuer of the bonds, Hanover Insurance Company ("Hanover" or the "Surety"), and its alleged agents, Scott Adams, Avalon Risk, LLC ("Avalon"), and Lighthouse Management, LLC ("Lighthouse"), failed to perform under the bonds and other related contracts and made misrepresentations in connection with the project.  Defendants Adams and Lighthouse filed cross-complaints against Hanover for its alleged role in the issuance of the bonds, seeking indemnification, or in the alternative, contribution on a proportionate basis with regard to all claims brought against them by Associated Construction.  Now before me is a motion for summary judgment brought by Hanover against Adams and Lighthouse. (ECF No. 156).  For the reasons that follow, the motion is GRANTED IN PART AND DENIED IN PART.  The motion is granted with respect to Adams's and Lighthouse's indemnification and "comparative indemnity" claims.  Further, for the reasons explained below, within 14 days of this ruling, Adams and Lighthouse shall show cause why I should not grant summary judgment

1

as to the contribution claims on the ground that the Court has yet to issue a judgment against them.

## II. Background

### A. The Performance Bonds

The following facts, which are taken from the parties' Local Rule 56(a) Statements and the exhibits, are undisputed unless otherwise indicated. Associated Construction "served as construction manager for a residential housing project located in Stamford, Connecticut known as Park Square West Phase II ("the Project"). (ECF No. 158, Hanover's Local Rule 56(a)1 Statement ("Def.'s L.R. 56(a)1 Stmt.") ¶ 1); ECF No. 179-1, Adams's[1] Local Rule 56(a)2 Statement ("Pl.'s L.R. 56(a)2 Stmt.") ¶ 1.) "Intext Building System, LLC ("Intext") was a subcontractor engaged by [Associated Construction] to perform work on the Project." (Def.'s L.R. 56(a)1 Stmt. at ¶ 2; Pl.'s L.R. 56(a)2 Stmt. at ¶ 2.) Associated Construction informed "Intext that it would subcontract with Intext if Intext could secure payment and performance bond for the proposed subcontract." (Def.'s L.R. 56(a)1 Stmt. at ¶ 4; Pl.'s L.R. 56(a)2 Stmt. at ¶ 4.)[2] Associated Construction "referred Intext to an insurance agent who introduced Intext to Defendant Adams, a principal and president of Avalon Risk, LLC ('Avalon')." (Def.'s L.R. 56(a)1 Stmt. at ¶ 7; Pl.'s L.R. 56(a)2 Stmt. at ¶ 7.)

Avalon "was an agent of Hanover" and "had discretionary authority to issue surety bonds for the Surety within defined limits." (Def.'s L.R. 56(a)1 Stmt. at ¶ 8; Pl.'s L.R. 56(a)2 Stmt. at ¶ 8.) Adams advised Intext that Avalon lacked authority to issue a bond to Intext for a subcontract in excess of $2 million. (Def.'s L.R. 56(a)1 Stmt. at ¶ 9; Pl.'s L.R. 56(a)2 Stmt. at ¶

---

[1] Lighthouse did not file a response to Hanover's motion for summary judgment.

[2] Adams denies this statement "insofar as [it] implies that the parties entered into one subcontract." (Pl.'s L.R. 56(a)2 Stmt. at ¶ 4.)

2

9.) Associated Construction "drafted three Subcontracts, each in an amount less than $2 million that were intended [to] encompass the Original Scope: a 'Framing Subcontract' in the amount of $1,987,000 for interior and exterior metal stud framing; a 'Drywall Subcontract' in the amount of $1,881,000 for multiple tasks, including but not limited to drywall installation, fire-stopping, carpentry, and coordination among the three subcontracts; and a 'Materials Subcontract' in the amount of $642,000 for the purchase of drywall materials." (Def.'s L.R. 56(a)1 Stmt. at ¶ 11; Pl.'s L.R. 56(a)2 Stmt. at ¶ 11.) Associated Construction and Intext executed the Drywall and Framing Subcontracts, while Associated Construction and IBS Contracting, LLC ("IBS") executed the Materials Subcontract. (Def.'s L.R. 56(a)1 Stmt. at ¶¶ 12-13; Pl.'s L.R. 56(a)2 Stmt. at ¶¶ 12-13.)[3]

Avalon "underwrote and issued payment and performance bonds for each of the Subcontracts, each with a maximum amount of less than $2 million." (Def.'s L.R. 56(a)1 Stmt. at ¶ 15; Pl.'s L.R. 56(a)2 Stmt. at ¶ 15.) The parties diverge regarding whether the Surety had prior notice of the issuance of the bonds or was involved in their underwriting or issuance. (*Compare* Def.'s L.R. 56(a)1 Stmt. at ¶ 19 ("The Surety did not have actual prior notice of and was not involved in the underwriting or issuance of the Bonds.") *with* Pl.'s L.R. 56(a)2 Stmt. at ¶ 19 ("The Surety approved the Bonds once they were submitted to the Surety's computer system . . .").) Intext and Lighthouse also executed three Disbursement Control Agreements ("DCAs") for each of the Subcontracts. (Def.'s L.R. 56(a)1 Stmt. at ¶ 20; Pl.'s L.R. 56(a)2 Stmt. at ¶ 20.) Under the DCAs, Lighthouse "served as 'Disbursement Agent' for Intext . . ., which included

---

[3] The parties differ regarding whether IBS is an affiliated entity of Intext. (*Compare* Def.'s L.R. 56(a)1 Stmt. at ¶ 13 (contending IBS is related to Intext); Pl.'s L.R. 56(a)1 Stmt. at ¶ 13 (denying that assertion).) Since the difference between Intext and IBS is not relevant to my ruling, I refer to the entities collectively as "Intext" through the remainder of this ruling.

paying bills for Intext to the extent that funds were received by Lighthouse from [Associated Construction] under the Framing Subcontract and Drywall Subcontract." (Def.'s L.R. 56(a)1 Stmt. at ¶ 22; Pl.'s L.R. 56(a)2 Stmt. at ¶ 22.) Adams is the president of Lighthouse. (ECF No. 179-9, Deposition of Scott M. Adams, at 10:16-20.)

Adams did not contact the Surety regarding performance issues on the Project prior to June 2, 2014. (Def.'s L.R. 56(a)1 Stmt. at ¶ 24; Pl.'s L.R. 56(a)2 Stmt. at ¶ 24.) On June 12, 2014, Thomas Walsh, a senior executive with Associated Construction, called Joseph Brenstrom, the Surety's Vice President for Surety Claims, concerning "performance issues regarding the Bonds." (Def.'s L.R. 56(a)1 Stmt. at ¶ 25; Pl.'s L.R. 56(a)2 Stmt. at ¶ 25.) By June 12, 2014, Associated Construction has issued default notices to Intext on all of the Subcontracts. (Def.'s L.R. 56(a)1 Stmt. at ¶¶ 29-31; Pl.'s L.R. 56(a)2 Stmt. at ¶¶ 29-31.) "On July 15, 2014, [Associated Construction] terminated Intext on the Framing an[d] Drywall Subcontracts." (Def.'s L.R. 56(a)1 Stmt. at ¶ 33; Pl.'s L.R. 56(a)2 Stmt. at ¶ 33.) "In response to [Associated Construction's] claims on the Performance Bonds, the Surety [paid] $1,881,000 to [Associated Construction] under the Drywall Performance Bond and $475,739.27 under the Framing Performance Bond." (Def.'s L.R. 56(a)1 Stmt. at ¶ 34; Pl.'s L.R. 56(a)2 Stmt. at ¶ 34.)

### B. Associated Construction's Claim Against Lighthouse and Adams

Associated Construction's CUTPA claim against Adams[4] centers on several alleged misrepresentations made by him. The first of these misrepresentations allegedly took place at a meeting between Associated Construction management, Adams, and various others on October

---

[4] Associated Construction initially set out three claims against Adams and Lighthouse: a CUTPA claim, claim for breach of the covenant of good faith and fair dealing, and CUIPA claim. (*See* Complaint at 11-20.) I dismissed the latter two claims in response to the parties' motions to dismiss, however, leaving only the CUTPA claim. (*See* ECF No. 103 at 24.)

4

9, 2013. (*See* ECF No. 43 ("Complaint") at ¶ 19.) Adams allegedly misrepresented at that meeting that the three performance bonds "would perform exactly as if a single performance bond had been issued for all the work." (*Id.*) The second of these misrepresentations purportedly took place at another meeting between Associated Construction and Adams on May 8, 2014. (*Id.* at ¶ 32.) Adams allegedly misrepresented at that meeting that Intext's "cash flow was not a problem" and that Hanover would support Intext so as to enable it to complete the Sheetrock Work on time. (*Id.* at ¶¶ 32, 62(j)) The parties agree that Hanover was not aware of either of these meetings and that it did not authorize Adams to make any representations. (Def.'s L.R. 56(a)2 Stmt. at ¶¶ 38-48; Pl.'s L.R. 56(a)2 Stmt. at ¶¶ 38-48).[5]

Associated Construction's claims against Lighthouse center on the company's "failure to determine whether there were adequate funds in the funds control account when considered with the balance of the Contract Account," Adam's representations "that there were adequate funds to complete the Project," and Lighthouse's disbursal of "funds from the funds control account when it knew or should have known there were not enough funds available considering the balance to be paid under the Subcontract to complete the Sheetrock Work." (*Id.* at ¶ 62(k-l).) Associated Construction also claims that Lighthouse "took fees and other money over which [it] had control under the DCA[s] that was not used or available to pay for Work on the Project" and that it "failed to reconcile its fee after Intext was defaulted and terminated." (*Id.* at ¶ 62(n-o).) In its complaint, Associated Construction alleges that all of this conduct was intentional. (*See* Complaint at ¶ 67 ("The conduct alleged [within its CUTPA count against Adams and Lighthouse] was intentional.").)

---

[5] Adams denies most of these factual assertions on the basis that he did not make the misrepresentations in question but does not otherwise deny the allegations. (*See* Pl.'s L.R. 56(a)2 Stmt. at ¶¶ 38-48.)

5

### C. Cross-Complaints

After Associated Construction brought suit, Adams filed a cross-complaint against Hanover. (*See* ECF No. 106.) In his cross-complaint, Adams alleges that Hanover was "negligent, misrepresented certain facts, breached fiduciary duties, and breached contracts and/or agreement[s], and that such aforementioned acts were the proximate cause of [Associated Construction's] alleged damages and/or losses." (*Id.* at 11-12.) The complaint goes on to note that any liability Adams might have to Associated Construction would "be the direct and proximate result of active and affirmative conduct on the part of Hanover." (*Id.* at ¶ 20) As such, Adams brings claims against Hanover for "indemnity," "comparative indemnity," and "contribution." (*Id.* at 11-13.) He also seeks a declaratory judgment as to "the rights, responsibilities and obligations of [Hanover] as to [Adams]."[6] (*Id.* at 13.) Lighthouse brings nearly a carbon copy of Adams's cross-complaint against Hanover. It alleges that Hanover "was negligent, misrepresented certain facts, breached fiduciary duties, and breached contracts and/or agreements operative to this claim, and that such aforementioned acts were the proximate cause of [Associated Construction's] alleged damages and/or losses." (ECF No. 114 at 10-11.) It also alleges claims for indemnity, comparative indemnity, contribution, and for declaratory relief.[7] (*Id.* at 10-13.)

### III. Standard of Review

Summary judgment is appropriate only when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

---

[6] Since Adams's claim for declaratory relief is entirely duplicative of the other counts in his cross-complaint, I do not separately address it in this ruling.

[7] I also decline to address separately Lighthouse's claim for declaratory relief, which is duplicative of its other counts.

law." Fed. R. Civ. P. 56(a). "In making that determination, a court must view the evidence in the light most favorable to the opposing party." *Tolan v. Cotton,* 134 S.Ct. 1861, 1866 (2014) (internal quotation marks omitted). "A fact is material if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotation marks omitted). The moving party bears the burden "of showing that no genuine factual dispute exists . . . , and in assessing the record to determine whether there is a genuine issue as to any material fact, the court is required to resolve all ambiguities and draw all factual inferences" in favor of the non-moving party. *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203 (2d Cir. 1995).

IV. **Discussion**

  A. **Indemnification Claims**

Under Connecticut law, there is ordinarily "no right of indemnity or contribution between joint tort-feasors." *Kyrtatas v. Stop & Shop, Inc.*, 205 Conn. 694, 697 (1988) (quoting *Caviote v. Shea*, 116 Conn. 569, 575 (1933)). "Where, however, one of the defendants is in control of the situation and his negligence alone is the direct immediate cause of the injury and the other defendant does not know of the fault, has no reason to anticipate it and may reasonably rely upon the former not to commit a wrong, it is only justice that the former should bear the burden of damages due to injury." *Id.* (quoting *Preferred Accident Ins. Co. v. Musante, Berman & Steinberg Co.*, 133 Conn. 536, 543 (1947)). In such cases, Connecticut law distinguishes between "'active or primary negligence,'" and "'passive or secondary negligence'"—"[i]ndemnity shifts the impact of liability from passive joint tortfeasors to active ones." *Id.* (quoting *Kaplan v. Merberg Wrecking Corporation*, 152 Conn. 405, 415 (1965)). To establish a claim for common law indemnification, a party must demonstrate the following four elements:

7

"(1) that the other tortfeasor was negligent; (2) that [that] negligence, rather than [the party's], was the direct, immediate cause of the accident and injuries; (3) that [the other tortfeasor] was in control of the situation to the exclusion of [the party]; and (4) that [the party] did not know of such negligence, had no reason to anticipate it, and could reasonably rely on the other tortfeasor not to be negligent." *Skuzinski v. Bouchard Fuels, Inc.* 240 Conn. 694, 698 (1997) (quoting *Kyrtatas*, 205 Conn. at 698.)

Hanover argues that Adams's and Lighthouse's indemnification claims fail because Associated Construction's claim against them alleges solely intentional wrongful conduct. (ECF No. 157 at 14). I agree. As an initial matter, it is clear that Adams and Lighthouse have been accused only of intentional wrongful conduct. As noted above, Associated Construction's complaint alleges that Adams made intentional misrepresentations. (*See* Associated Construction's Complaint at ¶¶ 62 (alleging Adams made misrepresentations at October 9, 2013 and May 8, 2014 meetings), 67 (alleging that this conduct was intentional), 75 (reiterating allegation that Adams made intentional misrepresentation at May 8, 2014 meeting).) It also alleges that Lighthouse engaged in intentional misconduct. (*See id.* at ¶¶ 62 (alleging Lighthouse made a misrepresentation regarding the amount of funds in the funds control account and committed other malfeasance with respect to disbursements and fees under the DCAs), 67 (alleging that this conduct was intentional).[8]

---

[8] Adams claims that since "the underlying tortious conduct [asserted by Associated Construction] is a violation of CUTPA through CUIPA, which requires [Associated Construction] to prove the elements of a common law claim for negligent misrepresentation," the underlying claim does not constitute an intentional tort. (*See* ECF No. 179 at 9.) As noted above, however, Associated Construction's complaint expressly asserts that all of the conduct alleged in its CUTPA claim was intentional. (*See* Complaint at ¶ 67.) That a showing of mere negligence would be enough to prove liability is, therefore, beside the point.

While the Court is unaware of—and the parties do not cite—any Connecticut appellate court decision addressing specifically whether a party may seek indemnification for intentional conduct, the more persuasive reading of Connecticut law supports Hanover's position. First, the exception to the general rule against indemnification is couched in terms of negligence. The exception distinguishes between "active or primary negligence" and "passive or secondary negligence," and also applies only when a third-party plaintiff can establish that the other tortfeasor's "negligence, rather than the [third-party] plaintiff's, was the direct, immediate cause of the accident and injuries." *Kyrtatas*, 205 Conn. at 698 (internal quotation marks omitted). These references suggest that the exception may be invoked only by negligent third-party plaintiffs and then only if they were "passively negligent."

Second, the Connecticut Supreme Court has previously suggested that parties cannot avail themselves of indemnification for intentional misconduct. The exception to the general rule against indemnification listed above originates, at least in part, from the Connecticut Supreme Court's decision in *Preferred Accident Insurance Co. of N. Y.  See* 133 Conn. at 542 ("The plaintiff in an action against [a] contractor cannot recover unless he shows that the active negligence and wrong which caused [a]n injury in question were the negligence and wrong of the defendant or, in other words, that the defendant was the party primarily liable for the wrongful act which occasioned the injury in respect of which the plaintiff has been compelled to pay damages." (internal quotation marks omitted)). The *Preferred* court noted, however, that "the applicability of this rule is negatived, wherever it appears that the party seeking indemnity was himself guilty of affirmative misconduct which was a proximate cause of the injury in question." *Id.* at 542; *see also id.* at 543 ("Where there are two joint tort-feasors and each is guilty of intentional wrongdoing there may be sound justification for a denial of contribution because

9

either party in seeking it would have to take his stand upon his own wrong. We have held that where the negligence of each of two defendants enters immediately and directly into the production of the accident neither should have a right to contribution."). As several Superior Court cases have noted, this reasoning strongly suggests that a party sued for an intentional tort cannot avail itself of indemnification.[9] *See Lassow v. Jefferson Pilot Fin. Ins. Co.*, No. CV010807131S, 2003 WL 22206242, at *9 (Conn. Super. Ct. Sept. 8, 2003) ("Following [the Connecticut Supreme Court's reasoning in *Preferred Accident Ins. Co.*], other courts have stated that there can be no indemnification [for intentional torts]."); *Siegel v. Kaesser Const. Co.*, No. CV90268803, 1991 WL 35582, at *2 (Conn. Super. Ct. Mar. 5, 1991) (rejecting indemnification claim brought by party accused of CUTPA violation in part on basis of *Preferred Accident Ins. Co.*).

Third, the Connecticut Superior Court decisions on point have held that a party accused solely of intentional conduct cannot maintain a common-law indemnification action. *See Peterson v. Hume*, No. HHDCV115035394S, 2015 WL 1919433, at *5 (Conn. Super. Ct. Mar. 30, 2015) ("[T]he majority of Superior Court Judges who have addressed the issue have held that there is no common-law action for indemnification when the first-party action is based solely on intentional conduct."); *Wood v. Club, LLC*, No. FSTCV136016946S, 2013 WL 6912874, at *3 (Conn. Super. Ct. Nov. 29, 2013) ("Although there is an 'absence of any controlling [a]ppellate

---

[9] It is also worth noting that Connecticut has a public policy against allowing parties to contract for indemnity for intentional or reckless and wanton misconduct. *See, e.g.*, *Wright v. Town of Willington*, No. X09CV065008202, 2007 WL 4801438, at *2 (Conn. Super. Ct. Dec. 13, 2007) (noting existence of public policy against contracts by which party would be indemnified for its intentional or reckless and wanton misconduct). Permitting the shifting of liability to third-parties for intentional wrongdoing would necessarily undermine this "public policy of deterring and penalizing intentional misconduct . . . ." *Id.* (quoting *Friedman v. Hartman*, 787 F. Supp. 411, 422 (S.D.N.Y. 1992)).

10

authority' regarding whether a claim of indemnification can be brought for intentional torts, 'the majority [of Superior Courts] view that there is no common-law action for indemnification for intentional tortious conduct.'" (quoting *Martel v. Burkamp*, No. CVH 7684, 2009 WL 2243768, at *2 (Conn. Super. Ct. July 23, 2009)); *Herrera v. Adams*, No. CV106004615, 2011 WL 6756914, at *4 (Conn. Super. Ct. Nov. 30, 2011) ("Although the appellate case law does not explicitly limit common-law indemnification to negligence cases only, the majority of trial court decisions find that there is no common-law indemnification for intentional tortious conduct." (internal citations omitted)).[10]

The two Connecticut Superior Court decisions Adams cites are not to the contrary. (*See* ECF No. 179 at 3-4 (citing *A & G Contracting, Inc. v. Design/Build Collaborative, LLC*, No. CV106008755, 2012 WL 4377775 (Conn. Super. Ct. Aug. 23, 2012); *Segway, Inc. v. Special Olympics Connecticut, Inc.*, No. CV116022089S, 2015 WL 1244509 (Conn. Super. Ct. Feb. 23, 2015).) Both *A & G Contracting, Inc.*, and *Segway, Inc.* are premised on the principle that a

---

[10] Although some of these cases refer to a "majority" of Connecticut Superior Court decisions, none cites a case that actually reflects a contrary view, i.e., a view that a person sued solely for intentional wrongdoing may seek indemnity under the common law from a third party. Some of these cases suggest that *Shelby Ins. Co. v Castellon*, 2000 WL 775506, No. CV 980416779S (May 26, 2000) reflects such a view, but it does not. The decision in that case indicates that parties seeking an indemnity had been sued for negligence arising from a fire at their business premises that had damaged neighboring businesses. *Id.* at *1. Those parties sought indemnity from the Fire Marshal who argued, among other things, and for reasons that are unclear from the decision, that "indemnification is limited to negligence actions." *Id.* at 2. The court declined to grant the Fire Marshal summary judgment on this ground, however, reasoning that while "the principal modern cases in Connecticut that have considered indemnification have done so in the active/passive negligence context . . ., [t]hose cases do not . . . explicitly limit common law indemnification to negligence actions only." *Id.* (internal citations omitted). The court then noted that the Restatement (Second) Torts "does not contain this limitation" and "recognizes that cases have permitted indemnity in situations . . . *in which a negligent party seeks indemnification from a party who acted recklessly.*" *Id.* (emphasis added). In other words, even the *Castellon* court's view that common law indemnity may be available outside the negligence context envisaged reckless or intentional conduct by third-party *defendants*, not by the party seeking indemnity.

11

third-party *defendant* should not be able to escape liability for common law indemnity by virtue of the fact that it was accused of reckless or intentional tortious conduct. *See A & G Contracting, Inc.*, 2012 WL 4377775 at *3 ("Public policy disfavors intentional torts in general and fraudulent misrepresentation in particular. Equity requires that a negligent tortfeasor has a right to indemnity from an intentional tortfeasor." (internal quotation marks omitted)); *Segway, Inc.*, 2015 WL 1244509, at *9 ("Indemnification is grounded in principles of equity. To adopt the defendants' position would shield tortfeasors from liability for their reckless conduct via an indemnification action. It would also preclude parties from recovering for the reckless conduct of others. This is contrary to equity."). The reasoning of these cases is inapplicable to this case, because Adams and Lighthouse have been accused of intentional misconduct.

For these reasons, Hanover is entitled to summary judgment on Adams's and Lighthouse's indemnification claims.

### B. Comparative Indemnity Claims

Adams's and Lighthouse's cross-complaints allege "comparative indemnity" against Hanover, but do not cite any legal or statutory basis for such an action. (*See* ECF No. 106 at 12; ECF No. 114 at 11.) I am unaware of any Connecticut case law using the term, "comparative indemnity." In Adams's response to Hanover's motion for summary judgment, however, he invokes Conn. Gen. Stat. § 52-572h. (*See* ECF No. 179 at 13.) I therefore conclude that Adams's and Lighthouse's claim[11] must be based upon Conn. Gen. Stat. § 52-572h. That statute provides that "[i]n a negligence action to recover damages resulting from personal injury, wrongful death or damage to property . . . , if the damages are determined to be proximately

---

[11] Although Lighthouse did not submit an opposition, the similarity of its complaint to that of Adams suggests a similar basis. Further, as noted above, there is no apparent other legal basis for a "comparative indemnity" claim under Connecticut law.

caused by the negligence of more than one party, each party against whom recovery is allowed shall be liable to the claimant only for such party's proportionate share of the recoverable economic damages and the recoverable noneconomic damages . . . ." Conn. Gen. Stat. § 52-572h(c). Hanover contends that Adams's and Lighthouse's comparative indemnity claims fail for the same reason as its indemnification claim—because a party cannot seek indemnification for intentional torts. (*See* ECF No. 157 at 21 (asserting that if these claims are intended as common law indemnification claims, they must be dismissed for the same reasons as the previous indemnification claim). I concur.

As an initial matter, Adams's claim for "comparative indemnity" under § 52-572h presents a contradiction in terms. In *Kyrtatas*, the Connecticut Supreme Court distinguished between the concepts of indemnification and contribution, noting that:

> Comparative responsibility is inconsistent with indemnification because the former allows a jury to assign liability in specific proportion among several defendants on the basis of the evidence presented while the latter doctrine arose in response to the common law prohibition against contribution, and applies only in situations in which a passive joint tortfeasor has no actual responsibility for a tort. . . . [I]ndemnity involves a claim for reimbursement in full from one on whom a primary liability is claimed to rest, while contribution involves a claim for reimbursement of a share of a payment necessarily made by the claimant which equitably should have been paid in part by others.

205 Conn. at 700-01. As the passage above demonstrates, Connecticut law does not recognize the concept of "comparative indemnity" because indemnification is a zero sum game. A party seeking indemnification pursues the shifting of the entirety of a liability—not an apportionment. Thus, Connecticut law recognizes no claim of "comparative indemnity."

Even if a claim for "comparative indemnity" under § 52-572h did exist,[12] it would not help Adams and Lighthouse. The statutory text of § 52-572h expressly limits comparative negligence claims to "negligence actions." *See Belanger v. Vill. Pub I, Inc.*, 26 Conn. App. 509, 513 (1992) ("[A]ccording to its plain language, § 52-572h applies only to negligence actions."). As noted above, Adams and Lighthouse are accused only of intentional conduct. They therefore cannot avail themselves of the doctrine of comparative negligence under Connecticut law. *See Kramer v. Petisi*, 285 Conn. 674, 684 (2008) (concluding that party accused of fraudulent misrepresentation could not avail herself of comparative negligence under § 52-572h because "fraudulent misrepresentation is an intentional tort").

I therefore grant Hanover's motion for summary judgment with respect to Adams's and Lighthouse's claims for comparative indemnity.

### C. Contribution Claims

"Contribution is a payment made by each, or by any, of several having a *common interest or liability* of his share in the loss suffered, or in the money necessarily paid by one of the parties in behalf of the others." *Crotta v. Home Depot, Inc.*, 249 Conn. 634, 639 (internal quotation marks omitted). "The right of action for contribution, which is equitable in origin, arises when, as between multiple parties jointly bound to pay a sum of money, one party is compelled to pay the entire sum. That party may then assert a right of contribution against the others for their proportionate share of the common obligation." *Kaplan v. Merberg Wrecking Corp.*, 152 Conn. 405, 412 (1965). The Connecticut Supreme Court has cautioned, however, that "a tortfeasor compelled to discharge a liability for a tort cannot recover contribution from a joint tortfeasor

---

[12] It is also worth noting that § 52-572h expressly makes no change to the common law of indemnification: "[t]his section shall not impair any right to indemnity under existing law." Conn. Gen. Stat. § 52-572h(j).

whose participation therein gave the injured person no cause of action against him, since the element of common liability of both tortfeasors to the injured person, essential to the right of contribution, is lacking in such cases." *Crotta*, 259 Conn. at 639 (internal quotation marks and emphases omitted).

Hanover contends that Adams's and Lighthouse's contribution claims fail because there "is no right of contribution among joint tortfeasors." (*See* ECF No. 157 at 21 (citing *Cimino v. Yale Univ.*, 638 F. Supp. 952, 957 (D. Conn. 1986) ("It is well established under Connecticut law that there is no contribution among joint tortfeasors.")).) This statement of the law is not quite correct. Under Conn. Gen. Stat. § 52-572h(h), "[a] right of contribution exists in parties who . . . are required to pay more than their proportionate share of such judgment." *See also Miller v. Castro*, No. NNHCV156053967S, 2016 WL 921595, at *5 (Conn. Super. Ct. Feb. 17, 2016) (noting that although there is no right to contribution at common law, § 52-572h "provide[s] a right of contribution to tortfeasors who paid more than their proportional share of damages").

Although Hanover's main argument does not warrant summary judgment as to Adams's contribution claim, there is another ground upon which Adams's contribution claim appears to fail: ripeness. A right of contribution arises only after a judgment has been rendered. *See Hanover Ins. Co. v. Fireman's Fund Ins. Co.*, 217 Conn. 340, 353 (1991) ("The right of action for contribution . . . arises when, as between multiple parties jointly bound to pay a sum of money, one party is compelled to pay the entire sum. That party *may then assert* a right of contribution against the others for their proportionate share of the common obligation." (emphasis added)); *Gladding v. Saren*, No. CV97327219S, 1997 WL 746401, at *5 (Conn. Super. Ct. Nov. 21, 1997) (rejecting claim for contribution as premature "because there has been neither a determination of the proportionate share of damages, nor has [the party claiming

contribution] made any payment in excess of her proportionate share of the plaintiff's claim"); *Simon v. My Bread Baking Co.*, No. CV 980165440, 1999 WL 966614, at *1 (Conn. Super. Ct. Oct. 14, 1999) ("Since this case has not reached a final judgment, the third-party plaintiffs have not stated a legally sufficient cause of action for contribution at this time.").

But as noted above, this ground was not raised by Hanover, and under Rule 56(f) of the Federal Rules of Civil Procedure, I may grant summary judgment on a ground not raised by a party only "[a]fter giving notice and reasonable time to respond." Fed. R. Civ. P. 56(f); *see also Wiley v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015) ("Rule 56 does permit a sua sponte grant of summary judgment dismissing a claim—but only under certain conditions . . . Rule 56(f) permits a district court to grant summary judgment on grounds not raised by a party . . . [b]ut a district court may do so only after giving notice and reasonable time to respond.") (internal quotation marks, alterations, and citations omitted). Therefore, I will defer ruling on the contribution claim until the parties have had an opportunity to brief this issue in accordance with my instructions set forth in the Conclusion below.

### V. Conclusion

For the reasons set forth above, Hanover's motion for summary judgment (ECF No. 156) is granted with respect to Adams's and Lighthouse's indemnification and comparative indemnity claims. With respect to the contribution claims, within **fourteen (14) days** of this order, Adams and Lighthouse shall show cause why I should not grant summary judgment as to the contribution claims on the ground that the Court has yet to issue a judgment against them. Hanover shall then have **fourteen (14) days** to file a response to Adams's and Lighthouse's brief. No replies will be permitted.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated:   Hartford, Connecticut
         August 21, 2018