UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ASSOCIATED CONSTRUCTION / AP CONSTRUCTION, LLC<br>    Plaintiff,<br><br>v.<br><br>THE HANOVER INSURANCE COMPANY, et al.<br>    Defendants. | No. 3:15-cv-1600 (MPS) |

## I. Introduction

This lawsuit arises out of surety bonds issued for a construction project in Stamford, Connecticut. Associated Construction / A.P. Construction, LLC ("Associated Construction"), a construction contractor, alleges that the issuer of the bonds, Hanover Insurance Company ("Hanover" or the "Surety"), and its alleged agents, Scott Adams, Avalon Risk, LLC ("Avalon"), and Lighthouse Management, LLC ("Lighthouse"), failed to perform under the bonds and other related contracts and made misrepresentations in connection with the project. Defendant Hanover filed a cross-complaint against Defendant Adams for negligence and breach of fiduciary duty based upon his alleged role in the events noted above. Now before me is a motion for summary judgment brought by Adams against Hanover on its cross-complaint. (ECF No. 160). For the reasons that follow, the motion is DENIED.

## II. Background

### a. Factual Background[1]

---

[1] The Court assumes the parties' familiarity with the underlying facts of this matter in light of its prior rulings and therefore sets out only those facts relevant to this ruling.

1

The following facts, which are taken from the parties' Local Rule 56(a) Statements and the exhibits, are undisputed unless otherwise indicated. "On February 20, 2008, [Hanover], a publicly traded insurance company with a home office in the state of Massachusetts, entered into an Agency Agreement with [Avalon] (hereinafter, the 'Agency Agreement'), a licensed insurance agency located in the State of New Jersey, wherein Hanover appointed Avalon as one of Hanover's agents." (ECF No. 161, Adams's Local Rule 56(a)1 Statement ("Def.'s L.R. 56(a)1 Stmt.") at ¶ 1); ECF No. 175, Hanover's Local Rule 56(a)2 Statement ("Pl.'s L.R. 56(a)2 Stmt.") at ¶ 1.)[2] "Adams executed the Agency Agreement on behalf of Avalon as the chief executive officer ("CEO") of Avalon. ((Def.'s L.R. 56(a)1 Stmt. at ¶ 4; Pl.'s L.R. 56(a)2 Stmt. at ¶ 4.) "On January 11, 2010, Hanover and Avalon entered into a Letter of Authority (the 'Letter of Authority')," which "was addressed to Scott Adams as CEO of Avalon and signed by him as CEO of Avalon." (Def.'s L.R. 56(a)1 Stmt. at ¶¶ 6-7; Pl.'s L.R. 56(a)2 Stmt. at ¶¶ 6-7.)

### b. Hanover's Cross-Complaint Against Adams

Hanover's cross-complaint asserts claims of negligence and breach of fiduciary duty against Adams. The cross-complaint rests upon the contention that Adams exceeded the scope of his authority in issuing the bonds at the heart of Associated Construction's case and that he engaged in various other breaches of his duty to Hanover in his actions thereafter. In particular,

---

[2] Hanover objects to this factual statement on the grounds that it does not constitute "a concise statement of material fact as required by Rule 56(a)1." (ECF No. 175 at 1.) Since this is neither a proper denial nor objection to the statement in question, I deem it admitted. *See* D. Conn. L. R. 56(a)(3) ("[E]ach denial in an opponent's Local Rule 56(a)2 Statement . . . must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial, or (2) other evidence that would be admissible at trial. . . . Failure to provide specific citations to evidence in the record as required by this Local Rule may result in the Court deeming admitted certain facts that are supported by the evidence in accordance with Local Rule 56(a)1 . . . . .").

Hanover alleges that the performance bonds Adams issued through Avalon "exceeded the discretionary authority afforded to Avalon under the Letter of Authority to issue surety bonds in the name of Hanover without obtaining Hanover's specific, prior approval." (ECF No. 119 ("Cross-Complaint") at 7.) It also contends that Adams breached his duty to Hanover by "issuing the [performance bonds] notwithstanding that the underlying contracts contained liquidated damages clauses in excess of $1,000 per day and [Associated Construction] had made commitments to advance payments to [the contractor] prior to commencing work and communicating with [Associated Construction] [regarding the contractor's] performance issues without providing timely notice to Hanover." (*Id.* at ¶ 23.) Based upon these allegations, Hanover alleges a negligence claim contending that Adams, as an agent for Hanover, "was required to exercise reasonable care and skill in performing his duties, including complying with the limitations upon his authority." (*Id.* at 9.) Hanover also alleges that Adams, "[a]s agent and fiduciary for Hanover" violated his fiduciary duties to the Surety. (*Id.* at 9-10.)

### III.     Standard of Review

Summary judgment is appropriate only when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In making that determination, a court must view the evidence in the light most favorable to the opposing party." *Tolan v. Cotton,* 134 S. Ct. 1861, 1866 (2014) (internal quotation marks omitted). "A fact is material if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotation marks omitted). The moving party bears the burden "of showing that no genuine factual dispute exists . . . , and in assessing the record to determine whether there is a genuine issue as to any material fact, the court is required to resolve

all ambiguities and draw all factual inferences" in favor of the non-moving party. *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203 (2d Cir. 1995).

IV. **Discussion**

   a. **Whether Adams Acted as an Agent of Hanover**

Adams's main argument is that Hanover cannot establish that Adams was an agent of Hanover for the purposes of its claims. (*See* ECF No. 162 at 4-10.) Under Connecticut law, "[a]gency is defined as the fiduciary relationship which results from manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act . . . ." *Beckenstein v. Potter and Carrier, Inc.*, 191 Conn. 120, 132 (1983) (internal quotation marks omitted). To establish the existence of an agency relationship, a party must demonstrate: "(1) manifestation by the principal that the agent will act for him; (2) acceptance by the agent of the undertaking; and (3) an understanding between the parties that the principal will be in control of the undertaking." *Id.* "The existence of an agency relationship is a question of fact." *Id.* And finally, "the labels used by the parties in referring to their relationship are not determinative; rather a court must look to the operative terms of their agreement or understanding." *Id.* (internal quotation marks omitted). For the following reasons, I conclude there is a genuine issue of material fact regarding whether Adams was an agent of Hanover.

First, Hanover designated Adams as its agent for the purposes of Connecticut law governing insurers. Under Conn. Gen. Stat. § 38a-702m(a), "[a]n insurer producer shall not act as an agent of an insurer unless the insurance producer becomes an appointed agent of the insurer." "To appoint a producer as its agent, the appointing insurer shall file, in a form approved by the commissioner, a notice of appointment not later than fifteen days after the date the agency contract is executed or the first insurance application is submitted." Conn. Gen. Stat.

§ 38a-702m(b). Here, Hanover appointed Adams as its agent under § 38a-702(m). (*See* ECF No. 175-20, Ex. 18 ("Notice of Appointment") at 2 (noting that Adams was appointed as an agent of Hanover on February 18, 2008).) The statute leaves little doubt that Adams was appointed as an agent of Hanover—it specifies that "[a]n insurance producer who is not acting as an agent of an insurer is not required to become appointed." Conn. Gen. Stat. § 38a-702m; *see also Esposito v. CPM Ins. Servs., Inc.*, 50 Conn. Supp. 283, 298 (Super. Ct. 2006) (noting that § 38a-702m(a) provides that, "upon appointment, an insurance agent acts 'as an agent of an insurer'"). Thus, the existence of the appointment form at the very least raises an issue of genuine material fact concerning whether Adams acted as Hanover's agent.

Second, Hanover gave Adams its power of attorney with respect to the issuance of bonds on its paper. (*See* ECF No. 175-24, Ex. 19 (signed power of attorney form designating Adams as "lawful Attorney(s)-in-fact to sign, execute, seal, acknowledge and deliver for, . . . on [Hanover's] behalf . . . any and all bonds, recognizances, undertakings, contracts of indemnity or other writings obligatory . . . ."). Under Connecticut law, providing a party with a power of attorney creates an agency relationship. *See Long v. Schull*, 184 Conn. 252, 256 (1981) (noting that a power of attorney constituted "a written, formal contract of agency, creating a principal-agent relationship"); *Przekopski v. Przekop*, 124 Conn. App. 238, 245 (2010) ("The . . . power of attorney created a formal contract of agency between the decedent, the principal, and the plaintiff, the agent."); *Kindred Nursing Centers E., LLC v. Morin*, 125 Conn. App. 165, 167 (2010) ("Under our common law, a power of attorney creates a formal contract of agency between the grantor and his attorney in fact."). Thus, Hanover's bestowal of its power of attorney upon Adams also, at the very least, gives rise to a genuine issue of material fact concerning whether he acted as the Surety's agent.

Third and finally, Hanover provided Adams with a notice that appears to formally appoint him as an agent of the Surety. The letter in question, which is addressed to Adams individually, notes Adams's appointment individually to sell bonds on behalf of Hanover insurance company. (*See* ECF No. 175-19, Ex. 17 ("Appointment Letter").) While Adams quibbles with the nature of this letter and its significance in determining his relationship with Hanover, the fact that the letter designates him individually—as opposed to Avalon—creates an issue of genuine material fact regarding whether he acted as Hanover's agent.

Adams raises a number of unconvincing counterpoints. His principal argument is that the Agency Agreement between him and Hanover, along with the Letter of Authority, concern Avalon, not Adams. (*See* ECF No. 162 at 9.)[3] These facts, while potentially relevant to the issue of whether Adams acted as Hanover's agent, are hardly dispositive in light of the materials listed above. It remains possible that both Avalon and Adams served as agents of Hanover. Next, Adams contends that Hanover's pleadings elsewhere in this case contradict its cross-claims. (*See id.* at 11.) Adams notes that Hanover pleads in its answer to Associated Construction's complaint that Adams did not act as its agent for the purposes of the alleged bonds or "in connection with the matters addressed in [Associated Construction's complaint]." (*Id.* (quoting ECF No. 47 at ¶¶ 15, 19).) These allegations are not mutually exclusive. Adams could have acted as Hanover's agent but exceeded the scope of his agency in issuing the bonds. Even if they were contradictory, the Federal Rules allow for alternative, even inconsistent, pleading. *See* Fed. R. Civ. P. 8(d). Adams also notes that Hanover sued Avalon as opposed to Adams in the state of New York. (ECF No. 162 at 11-12.) This has nothing to do with the present action. Finally,

---

[3] Adams also argues that Hanover did not designate Adams as an agent under Connecticut law. (*See* ECF No. 162 at 10 (citing Conn. Gen. Stat. § 38a-702m).) This, of course, is incorrect. (*See* Notice of Appointment.)

Adams contends in his reply brief that he never accepted an appointment as Hanover's agent even if Hanover manifested an intent to appoint him as such by sending him the appointment letter listed above. (*See* ECF No. 190 at 5-6 (citing Appointment Letter).) The fact that Adams executed Hanover's power of attorney form and consented to an appointment as its agent under Connecticut law, however, creates a genuine dispute of material fact on this point.[4]

For these reasons, I conclude that there is a genuine issue of material fact regarding whether Adams served as Hanover's agent.[5]

### b. Economic Loss Doctrine

Adams also argues that Hanover's claims against him fail under the economic loss doctrine. Under Connecticut law,[6] the economic loss doctrine bars "negligence claims that arise out of and are dependent on breach of contract claims that result only in economic loss." *Ulbrich*

---

[4] Adams cites the case of *D'Angelo Dev. & Const. Corp. v. Cordovano*, 121 Conn. App. 165 (2010), as precedent in favor of his position. (*See* ECF No. 190 at 7.) In *D'Angelo*, plaintiffs brought a claim against the president and sole employee of a construction company for his alleged negligence in constructing their home. *Id.* at 184. The *D'Angelo* court affirmed the dismissal of the claim on the basis that "there was no evidence that [the employee] engaged in the project in his individual capacity." *See id.* at 186 ("There is no question that a duty of care may arise out of a contract, but when the claim is brought against a defendant who is not a party to the contract, the duty must arise from something other than mere failure to perform properly under the contract."). *D'Angelo* is distinct from the present case in several ways. First, Hanover's claims against Adams do not rise solely out of a contract between them but rather out of his alleged appointment as Hanover's agent. Second, there is substantial evidence that Adams engaged with Hanover in his individual capacity—i.e., the three papers noted above listing Adams individually as a signatory, as opposed to Avalon.

[5] In light of this disposition, I do not reach Adams's contention that Hanover's negligence claim fails on the basis that Adams was not the Surety's agent. (*See* ECF No. 162 at 12-13.)

[6] In his opening brief, Adams contended that New Jersey law applied to this claim. (*See* ECF No. 162 at 14.) He withdrew this contention in his reply brief. (*See* ECF No. 190 at 3 ("For purposes of this motion, Avalon concedes that Connecticut law should apply and withdraws its request for the application of New Jersey law to the economic loss doctrine analysis.").)

*v. Groth*, 310 Conn. 375, 410 (2013). Tort claims are "dependent" on a contractual claim if they "are premised on the same alleged conduct with respect to the same personal property and rely on the same evidence" and if the plaintiff can provide "no theory under which [it] could prevail on [its] negligence . . . claim[]" if the contract claim failed. *Id.* at 404-05. There is a fundamental flaw with Adams's argument—Hanover does not allege a breach of contract claim against Adams. Adams's argument is therefore a nonstarter.

Even if Hanover's claims did sound in contract, Adams's contention would still founder. To the extent Hanover's claims are predicated on a contract, they are predicated on the Letter of Authority. (*See* ECF No. 119 at ¶ 17 (averring that Adams exceeded his authority under the Letter of Authority).) Hanover's claims are also predicated upon other allegations, however, including that Adams failed to properly report the performance bonds, that he made commitments on Hanover's behalf to advance payments to the contractor without providing timely notice to Hanover, and that he communicated with Associated Construction regarding issues under the performance bonds without timely notifying Hanover. (*See id.* at ¶¶ 18, 23.) Thus, Hanover's claims are not dependent upon the Letter of Authority in any event. As such, the economic loss doctrine does not bar Hanover's cross-claims.

V. **Conclusion**

For the reasons set forth above, Adams's motion for summary judgment (ECF No. 160) is hereby DENIED.

IT IS SO ORDERED.

                                                /s/
                                  Michael P. Shea, U.S.D.J.

Dated:        Hartford, Connecticut

August 21, 2018